# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **Gilberto Rodriguez CHAVERRA**, )<br>as the Administrator of the Estate of Jeancarlo )<br>Alfonso Jimenez Joseph, A-204-603-723 )<br>2920 Maidenhair Drive )<br>Raleigh, North Carolina 27610 )<br>)<br>*Plaintiff-Petitioner*, )<br>)<br>v. )<br>)<br>**U.S. IMMIGRATION AND CUSTOMS** )<br>**ENFORCEMENT**, )<br>500 12th Street, S.W. )<br>Washington, D.C. 20536-5009; )<br>)<br>*Defendant*, )<br>)<br>**U.S. DEPARTMENT OF HOMELAND** )<br>**SECURITY – OFFICE OF INSPECTOR** )<br>**GENERAL**, )<br>245 Murray Lane )<br>Washington, D.C. 20528-0305; )<br>)<br>*Defendant*, )<br>)<br>**U.S. DEPARTMENT OF HOMELAND** )<br>**SECURITY – OFFICE FOR CIVIL** )<br>**RIGHTS AND CIVIL LIBERTIES**, )<br>Building 410, Mail Stop # 0190 )<br>Washington, D.C. 20528, )<br>)<br>*Defendant*, )<br>)<br>**Dr. Stewart D. SMITH**, in his Official )<br>Capacity as Assistant Director for the )<br>Department of Homeland Security, U.S. )<br>Immigration and Customs Enforcement, ICE )<br>Health Services Corps, )<br>500 12th Street S.W. )<br>Washington, D.C. 20536-5098 )<br>)<br>*Defendant-Respondent.* ) | Civil Action No.: 1:18-cv-289<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF MANDAMUS |

1

**PRELIMINARY STATEMENT**

1. This action involves the death of a longtime U.S. resident in a for-profit immigration detention center, his family's efforts to get answers about his death using the nation's open records laws, and federal agencies' repeated refusals to hand over a single document in response to their requests.

2. On May 15, 2017, Jeancarlo Alfonso Jimenez Joseph ("Mr. Jimenez"), a 27 year-old recipient of Deferred Action for Childhood Arrivals ("DACA"), passed away in solitary confinement while in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the privately operated Stewart Detention Center ("SDC") in Lumpkin, Georgia.

3. Though Mr. Jimenez was immediately identified by ICE and SDC staff as a suicide risk during his arrival and booking, and despite their knowledge of his documented history of schizophrenia, suicidal ideation, and multiple involuntary commitments—including one by a prior detention facility where officers act as ICE agents under a contract with ICE—ICE and SDC officials repeatedly subjected Mr. Jimenez to solitary confinement and denied him access to necessary mental health treatment and intervention.

4. Mr. Jimenez spent nearly six days—twice the allowable period—in administrative solitary confinement after being attacked and injured by another detainee.

5. Mr. Jimenez then spent the final eighteen days of his life in prolonged solitary confinement[1] as punishment for jumping from the top tier of his housing unit, an act he later described to guards as an effort to harm himself.

---

[1] The United Nations Special Rapporteur on Torture "defines prolonged solitary confinement as any period of solitary confinement in excess of 15 days." *Interim report of the Special Rapporteur of the Human Rights Council on torture and other cruel, inhuman or degrading treatment or punishment*, delivered to the United Nations General Assembly August 5, 2011, U.N. Doc A/66/268 at 22 ¶ 79 (Aug. 5, 2011) *available at* http://solitaryconfinement.org/uploads/SpecRapTortureAug2011.pdf (last visited Feb. 8, 2018). The Special Rapporteur concluded both prolonged solitary confinement and placement of persons with mental disabilities "can amount to torture or cruel, inhuman and degrading treatment or punishment." *Id.* at 22 ¶ 81.

6. Though he informed ICE medical personnel just days before he died that the voices in his head were telling him to kill himself and he begged for an upward adjustment to his anti-psychotic medication, officials never placed Mr. Jimenez on suicide watch or provided him emergency psychiatric intervention while he was in solitary confinement.

7. On the night Mr. Jimenez died, facility personnel reportedly observed him inside his solitary confinement cell using his bedsheet as a jump rope just hours before he would tie the sheet to an exposed sprinkler head and hang himself. A cursory glance inside the solitary confinement cell would have revealed to officers that Mr. Jimenez had written "Hallelujah The Grave Cometh" in large, dark letters on the wall.

8. The guard responsible for performing thirty-minute visual checks of Mr. Jimenez failed to do so. Instead, he falsified the facility detention logs to indicate the checks were performed.

9. Since Mr. Jimenez's death, two additional Georgia ICE detainees have perished as a result of medical conditions they suffered in detention.[2]

10. Deaths in immigration detention have reached their highest levels since 2009.[3]

11. But federal immigration authorities have signaled loosening of the standards put in place since 2009 to prevent unwarranted solitary confinement and in-custody deaths, as well as the closure of

---

[2] Jeremy Redmon, *ICE detainee third to die since May after being held in Georgia*, ATLANTA JOURNAL-CONSTITUTION (Jan. 31, 2018) *available at* http://www.ajc.com/news/state--regional-govt--politics/ice-detainee-who-was-held-south-georgia-dies/MUIQjgOaMxyKx6zTu0TnpK/ (last visited Feb. 7, 2018); Elly Yu, *ICE Detainee Dies, Third to Die in Less Than a Year After Being Held in Ga.*, WABE.ORG (Feb. 1, 2018) *available at* https://www.wabe.org/ice-detainee-dies-third-die-less-year-held-ga/ (last visited Feb. 8, 2018).

[3] Jeane Kuang, *Immigration detention deaths reach the highest total since 2009*, HOUSTON CHRONICLE (Jan. 12, 2018) *available at* https://www.houstonchronicle.com/news/houston-texas/houston/article/Immigration-detention-deaths-reach-the-highest-12494624.php (last visited Feb. 8, 2018).

6. Though he informed ICE medical personnel just days before he died that the voices in his head were telling him to kill himself and he begged for an upward adjustment to his anti-psychotic medication, officials never placed Mr. Jimenez on suicide watch or provided him emergency psychiatric intervention while he was in solitary confinement.

7. On the night Mr. Jimenez died, facility personnel reportedly observed him inside his solitary confinement cell using his bedsheet as a jump rope just hours before he would tie the sheet to an exposed sprinkler head and hang himself. A cursory glance inside the solitary confinement cell would have revealed to officers that Mr. Jimenez had written "Hallelujah The Grave Cometh" in large, dark letters on the wall.

8. The guard responsible for performing thirty-minute visual checks of Mr. Jimenez failed to do so. Instead, he falsified the facility detention logs to indicate the checks were performed.

9. Since Mr. Jimenez's death, two additional Georgia ICE detainees have perished as a result of medical conditions they suffered in detention.[2]

10. Deaths in immigration detention have reached their highest levels since 2009.[3]

11. But federal immigration authorities have signaled loosening of the standards put in place since 2009 to prevent unwarranted solitary confinement and in-custody deaths, as well as the closure of

---

[2] Jeremy Redmon, *ICE detainee third to die since May after being held in Georgia*, ATLANTA JOURNAL-CONSTITUTION (Jan. 31, 2018) *available at* http://www.ajc.com/news/state--regional-govt--politics/ice-detainee-who-was-held-south-georgia-dies/MUIQjgOaMxyKx6zTu0TnpK/ (last visited Feb. 7, 2018); Elly Yu, *ICE Detainee Dies, Third to Die in Less Than a Year After Being Held in Ga.*, WABE.ORG (Feb. 1, 2018) *available at* https://www.wabe.org/ice-detainee-dies-third-die-less-year-held-ga/ (last visited Feb. 8, 2018).

[3] Jeane Kuang, *Immigration detention deaths reach the highest total since 2009*, HOUSTON CHRONICLE (Jan. 12, 2018) *available at* https://www.houstonchronicle.com/news/houston-texas/houston/article/Immigration-detention-deaths-reach-the-highest-12494624.php (last visited Feb. 8, 2018).

ICE's Office of Detention Policy and Planning, which oversaw formulation of these standards.[4] These rollbacks threaten to amplify the "systemic indifference"[5] and "fatal neglect"[6] by ICE in response to in-custody detainee deaths.

12. Both before and after Mr. Jimenez's death, the Department of Homeland Security's Office of Inspector General ("DHS-OIG") released reports documenting struggles by ICE to provide mental healthcare[7] and violations of ICE policies and standards by agency officials responsible for the health and safety of immigration detainees at SDC—particularly those in solitary confinement and those suffering from mental health and other medical issues.[8] ICE itself has noted in federal contracting documents the difficulty of ensuring adequate medical staffing at SDC.[9]

---

[4] Caitlin Dickerson, *Trump Plan Would Curtail Protections for Detained Immigrants*, THE NEW YORK TIMES (Apr. 13, 2017) *available at* https://www.nytimes.com/2017/04/13/us/detained-immigrants-may-face-harsher-conditions-under-trump.html (last visited Feb. 8, 2018).

[5] *Systemic Indifference: Dangerous & Substandard Medical Care in US Immigration Detention*, Human Rights Watch & Community Initiatives for Visiting Immigrants in Confinement (May 2017) *available at* https://www.hrw.org/sites/default/files/report_pdf/usimmigration0517_web_0.pdf (last visited Feb. 8, 2018).

[6] *Fatal Neglect: How ICE Ignores Deaths in Detention*, American Civil Liberties Union, Detention Watch Network & National Immigrant Justice Center (Feb. 2016) *available at* https://www.detentionwatchnetwork.org/sites/default/files/reports/Fatal%20Neglect%20ACLU-DWN-NIJC.pdf (last visited Feb. 8, 2018).

[7] *See ICE Struggles to Hire and Retain Staff for Mental Health Cases in Immigration Detention*, Department of Homeland Security, Office of Inspector General, OIG-16-113-VR (Jul. 21, 2016) *available at* https://www.oig.dhs.gov/assets/VR/FY16/OIG-16-113-VR-Jul16.pdf (last visited Feb. 8, 2018).

[8] *Concerns about ICE Detainee Treatment and Care at Detention Facilities*, Dept. of Homeland Security, Office of Inspector General, OIG-18-32 (Dec. 11, 2017) (citing SDC for PBNDS violations relating to detainee classification, grievances, segregation, and medical care) *available at* https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf (last visited Feb. 7, 2018); *ICE Field Offices Need to Improve Compliance with Oversight Requirements for Segregation of Detainees with Mental Health Conditions*, Dept. of Homeland Security, Office of Inspector General, OIG-17-119 (Sept. 29, 2017) *available at* https://www.oig.dhs.gov/sites/default/files/assets/2017-11/OIG-17-119-Sep17.pdf (last visited Feb. 7, 2018) (citing Atlanta Field Office .

[9] *Justification for Other than Full and Open Competition*, U.S. Immigration and Customs Enforcement, Office of Acquisition Management (Jan. 25, 2017) ("Presently, ICE's Stewart Detention Center . . . [is] in critical need of RN staff to sustain operations[.] . . . At the Stewart Detention Center, which houses an average population of 1,850 detainees, only 1 in 5 of the Public Health Service positions is currently occupied (20% fill rate). . . . ICE's failure to sustain minimum RN staff levels will require

13. These government reports corroborate longstanding complaints by immigrant rights advocates about conditions of immigration detention and the failure of ICE to properly implement and enforce its detention and medical standards.[10]

14. Mr. Jimenez's family, including Plaintiff Gilberto Rodriguez Chaverra ("Plaintiff"), the Administrator of his Estate, sought records through counsel from ICE, DHS-OIG, and the Department of Homeland Security's Office for Civil Rights and Civil Liberties ("DHS-CRCL") regarding Mr. Jimenez's apprehension, detention, treatment, solitary confinement, and death in ICE custody.

15. For eight months, these agencies have failed to acknowledge, failed to timely respond, and categorically denied multiple Freedom of Information Act ("FOIA") requests for agency records relating to Mr. Jimenez and SDC.

16. Faced with the persistent denial of access to agency records, Plaintiff brings this action seeking a declaration that the agencies have unlawfully withheld agency records and an order enjoining further violations of FOIA.

17. Finally, ICE and the ICE Health Services Corps ("IHSC") have unlawfully denied Plaintiff direct access to Mr. Jimenez's medical records.

18. Instead of providing these records to Plaintiff directly, as required by binding agency standards, agency policy pronouncements, and the Privacy Rule, 45 C.F.R. §§ 160, 164 implementing

---

healthcare services to be reduced at each facility, endangering detainee and non-detainee safety, disrupting detention operations[.]) *available for download at* https://www.fbo.gov/utils/view?id=d44b68b3addf8474657256199d574f76 via https://govtribe.com/project/ihsc-maxim-ja-for-berks-and-stewart (last visited Feb. 8, 2018).

[10] *See, e.g., Imprisoned Justice: Inside Two Georgia Immigrant Detention Centers*, Penn State Law Center for Immigrants' Rights & Project South (May 4, 2017) *available at* https://projectsouth.org/wp-content/uploads/2017/06/Imprisoned_Justice_Report-1.pdf (last visited Feb. 8, 2018); *Prisoners of Profit: Immigrants and Detention in Georgia*, ACLU of Georgia (May 2012) *available at* https://www.acluga.org/sites/default/files/field_documents/prisoners_of_profit.pdf (last visited Feb. 8, 2018).

the Health Insurance Portability and Accountability Act ("HIPAA"), 110 Stat. 1936, ICE and IHSC maintain that the sole means Plaintiff has of obtaining Mr. Jimenez's medical records is the FOIA.

19. Consequently, Plaintiff seeks declaratory, injunctive, and mandamus relief requiring ICE to turn over unredacted copies of Mr. Jimenez's medical records.

## JURISDICTION AND VENUE

20. This Court has subject-matter jurisdiction over Plaintiff's FOIA claims pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (FOIA). Subject-matter jurisdiction lies under 28 U.S.C. § 1331 to adjudicate Plaintiff's claims under the Mandamus Act, 28 U.S.C. § 1361 and Administrative Procedure Act, 5 U.S.C. § 702. Plaintiff's request for declaratory and other relief is properly subject to this Court's subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

21. Venue is proper within this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

## PARTIES

22. Plaintiff Gilberto Rodriguez Chaverra ("Plaintiff") is an adult resident of the State of North Carolina. On December 19, 2017, the Wake County Superior Court issued Letters of Administration appointing Plaintiff the Administrator of the Estate of Jeancarlo Alfonso Jimenez Joseph pursuant to N.C.G.S. §§ 28A-6-1; 28-A-6-3; 28A-11-1; 36C-2-209. Case No. 2017 E 004100.

23. Plaintiff has exhausted all non-futile administrative remedies available to him.

24. Defendant ICE is an executive agency component of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

25. Defendant DHS-OIG is an executive agency component of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

26. Defendant DHS-CRCL is an executive agency component of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

27. Defendant Dr. Stewart D. Smith is the Assistant Director for the Department of Homeland Security, U.S. Immigration and Customs Enforcement, ICE Health Services Corps.

28. IHSC provides direct care to approximately 13,500 detainees housed at 21 designated facilities throughout the Nation to include medical, dental and mental health care, and public health services.

29. IHSC also provides medical case management and oversight for an additional 15,000 detainees housed at approximately 119 non-IHSC staffed detention facilities across the country.

30. In addition, IHSC oversees the financial authorization and payment for off-site specialty and emergency care services for detainees in ICE custody.[11]

31. IHSC is a "health care provider" within the meaning of HIPAA. 42 U.S.C. §§ 1320d(3), 1395x(u), 1395x(s); 45 U.S.C. § 160.103.

32. As a "health care provider," ICE transmits ICE detainee health information in electronic form in connection with "transactions" defined in 45 U.S.C. § 160.103.[12]

33. IHSC is therefore a "covered entity" under the HIPAA Privacy Rule even though the agency is not a "health plan" as defined by the Act.

34. Dr. Smith is the ICE / IHSC official who owes a mandatory duty to Plaintiff to provide unredacted copies of Mr. Jimenez's medical records, in accordance with 45 U.S.C. §§ 160.103, 164.502, and 164.524.

//

---

[11] *See* ICE Health Service Corps, Overview (last updated Jan. 3, 2018) *available at* https://www.ice.gov/ice-health-service-corps (last visited Feb. 8, 2018).

[12] *See* IHSC – Managed Care (last updated Jan. 3, 2018) *available at* https://www.ice.gov/ihs-managed-care (last visited Feb. 8, 2018). *See also* ICE Health Services Corps Medical Payment Authorization Request Form *available at* https://www.ice.gov/doclib/about/offices/ihsc/pdf/medpar-form.pdf (last visited Feb. 8, 2018).

## FACTS

**A. ICE's Unlawful Withholding of Agency Records Pertaining to Mr. Jimenez.**

35. On June 1, 2017, Plaintiff, through counsel, sent a FOIA request to ICE seeking "all records, including medical, pertaining to" Mr. Jimenez. Ex. A.

36. On June 14, 2017, ICE acknowledged Plaintiff's FOIA request and assigned it Case Number 2017-ICFO-32679. In the same communication, ICE demanded that Plaintiff return a Third Party Consent form executed by Mr. Jimenez. Ex. A.

37. The same day, Plaintiff, through counsel, provided a copy of ICE's Public Notice regarding Mr. Jimenez's in-custody death, Ex. B.

38. On June 16, 2017, ICE provided a separate acknowledgement of the perfected FOIA request. Ex. C.

39. On September 11, 2017, ICE provided Plaintiff, through his counsel, a final response to his FOIA request. Ex. D.

40. In its response, ICE determined that all responsive records would be categorically withheld under Exemption (7)(A) based on "the open status of ongoing criminal law enforcement investigations." Ex. D.

41. ICE reserved the right to assert withholdings under Exemptions 5, 6, 7(C), 7(D), and 7(F) "when FOIA Exemption (b)(7)(A) no longer applies." Ex. D.

42. On September 25, 2017, Plaintiff, through counsel, timely appealed ICE's categorical withholding of agency records. Ex. E.

43. Plaintiff challenged ICE's blanket 7(A) denial based on the documented closure of the Georgia Bureau of Investigation's criminal inquiry[13] and the absence of any indication that ICE's Office of Professional Responsibility ("OPR") or DHS-OIG had opened a *criminal* law enforcement investigation, which could potentially result in an enforcement proceeding, as opposed to a standard *internal agency review* of Mr. Jimenez's death, which cannot.

44. On October 5, 2017, ICE's Government Information Law Division acknowledged it received Plaintiff's timely appeal assigned the appeal tracking number 2018-ICAP-00004. Ex. F.

45. On October 23, 2017, ICE denied Plaintiff's appeal and upheld the categorical withholding of all agency records under Exemption 7(A). Once again, ICE reserved the right to apply additional withholdings after the alleged ongoing investigation that warranted categorical withholding concludes.

46. ICE's denial contends it confirmed with ICE OPR that as of October 12, 2017, an "ongoing criminal investigation" existed. Ex. G.

47. On November 2, 2017, ICE agency counseled confirmed in writing to Plaintiff's counsel that ICE OPR is not investigating Mr. Jimenez's death. Instead, DHS-OIG is performing the investigation.

**B. ICE's Unlawful Failure to Respond to Plaintiff's Request for Records Relating to SDC.**

48. On October 3, 2011, Plaintiff, through counsel, sent ICE a FOIA request, Ex. H, seeking four categories of agency records:

(1) Contracts and agreements governing medical and detention operations at SDC since January 1, 2017;

(2) Inspection records for SDC since January 1, 2015;

(3) Significant Incident Reports and Significant Event Notifications at SDC since January 1, 2017; and

---

[13] Jeremy Redmon, *GBI: No foul play in death of ICE detainee in South Georgia*, ATLANTA JOURNAL-CONSTITUTION (Aug. 16, 2017) *available at* http://www.ajc.com/news/breaking-news/gbi-foul-play-death-ice-detainee-south-georgia/89TnLq5mTZs4WyuvV106OP/ (last visited Feb. 8, 2018).

(4) ICE Health Services Corps policy and practice materials governing the performance of IHSC's medical duties at SDC.

49. On October 6, 2017, ICE acknowledged receipt of "ONLY item 1" (Contracts and Agreements) of Plaintiff's October 3 request and assigned this portion of the request tracking number **2018-ICFO-00999**. Ex. I (emphasis in original).

50. The agency sought clarification regarding the request, specifically, "the contract number(s) of the contract(s) for which" Plaintiff requested records.

51. The same day, Plaintiff, through counsel, provided the agency the two known contract numbers for SDC: DRO-IGSA-06-0003 and HSCEDM-09-F-IG051. Ex. I

52. ICE characterized Plaintiff's "perfected request" as "received" on October 11, 2017. Ex. J.

53. As of the date of this filing—120 days after claiming the request was "perfected"—ICE has provided no response to the portions of Plaintiff's FOIA request designated 2018-ICFO-00999.

54. According to the agency's online FOIA status checking tool, documents were estimated to have been delivered on December 27, 2017. Ex. K.

55. DHS complex-track requests are currently taking an average of 111 days.

56. On October 6, 2017, by separate email, ICE acknowledged receipt of "ONLY items 2-3" of Plaintiff's October 3 request and assigned this portion of the request tracking number **2018-ICFO-00998**. Ex. L (emphasis in original).

57. As of the date of this filing—128 days after receiving the request—ICE has provided no response to the portions of Plaintiff's FOIA request assigned tracking number 2018-ICFO-00998.

58. According to the agency's online FOIA status checking tool, documents were estimated to have been delivered on January 5, 2018. Ex. M.

59. As of the date of this filing, Plaintiff has received no acknowledgement, assigned tracking number for, or response to Item 4 (IHSC Medical Policies) in the October 3, 2017 request.

**C. DHS-OIG's Unlawful Failure to Respond to Plaintiff's FOIA Request.**

60. On October 16, 2017, Plaintiff, through counsel, sent a FOIA request for "all DHS-OIG records of investigations, referrals, or contemplated investigations involving (1) any incident or allegation at the [ICE] [SDC] occurring on or after January 1, 2015; (2) Any suicide attempt at the [SDC] since January 1, 2010; and (3) any allegation or incident involving CCA/CoreCivic or its personnel since January 1, 2010." Ex. N.

61. On November 2, 2017, DHS-OIG acknowledged receipt of Plaintiff's FOIA request and assigned it tracking number **2018-IGFO-00007**. Ex. O.

62. DHS-OIG has provided no records responsive to Plaintiff's request.

63. According to the agency's online case tracking tool, delivery of responsive documents was estimated November 20, 2017. Ex. P.

**D. DHS-CRCL's Unlawful Failure to Acknowledge or Respond to Plaintiff's FOIA Requests.**

64. On October 16, 2017, Plaintiff, through counsel, submitted two FOIA requests to DHS-CRCL via the agency's online FOIA portal.

65. The first request, Ex. Q, sought:

(1) All records relating to the arrest, detention death of Jeancarlo Jimenez-Joseph, A 204603723, and any subsequent investigation, action or analysis by DHS HQ; and

(2) All records relating to DHS HQ's communications, assessments, and/or investigations into CoreCivic and Stewart County, Georgia's compliance with their contracts to operate the Stewart Detention Facility in Lumpkin, Georgia beginning January 1, 2017 and continuing until the date of the agency's response to this request.

66. The second request, Ex. R, sought:

(1) All CRCL records relating to Jeancarlo Jimenez Joseph, A204603723, including, but not limited to, records relating to his death at the Stewart Detention Facility in Lumpkin, Georgia on May 15, 2017, and any postmortem reviews, analyses, communications, or reports regarding this event, CoreCivic/CCA, ICE, or the Stewart Detention Facility; and

(2) A copy of all contracts between CRCL and any mental health provider or medical provider for monitoring, analysis, or other consulting relating to immigrant detention.

11

67. To date, DHS-CRCL has failed to provide any acknowledgement, tracking number, or response to either of Plaintiff's requests.

**E. IHSC's Unlawful Refusal to Provide Plaintiff with Mr. Jimenez's Medical Records.**

68. On or about September 22, 2017, Plaintiff, through counsel, attempted to request Mr. Jimenez's medical records from the IHSC official in charge of SDC.

69. In response, Plaintiff's counsel received a call, followed by several subsequent written communications, from ICE District Court Litigation Division ("DCLD") counsel advising that the agency would only provide Mr. Jimenez's medical records through FOIA.

70. ICE DCLD advised Plaintiff, through counsel, that there was no mechanism other than FOIA for appealing this determination.

71. On February 6, 2018, ICE DCLD confirmed to Plaintiff's counsel in writing the agency's position that FOIA is the sole mechanism through which Plaintiff can secure Mr. Jimenez's medical records from ICE.

## CLAIMS FOR RELIEF
### COUNT ONE: VIOLATION OF THE FREEDOM OF INFORMATION ACT
### 5 U.S.C. § 552(a)(4)(B)
2018 ICE-CAP-00004, 2017-ICFO-32679
Unlawful Withholding of Agency Records by ICE

Responsive to Plaintiff's June 1, 2017 Request for Records Pertaining to Mr. Jimenez

72. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

73. Plaintiff has a legal right under FOIA to all non-exempt agency records responsive to the June 1, 2017, FOIA request assigned ICE tracking numbers 2018-ICE-CAP-00004 and 2017-ICFO-32679.

74. ICE unlawfully withheld non-exempt agency records responsive to Plaintiff's request.

75. ICE's categorical withholding under Exemption 7(A) violates FOIA by determining categorically that each and every responsive record was "compiled for law enforcement purposes" within the meaning of the Act.

76. ICE's categorical withholding under Exemption 7(A) violates FOIA because, upon information and belief, the open review of Mr. Jimenez's death is neither designed for nor in anticipation of any contemplated administrative, civil, or criminal enforcement proceeding.

77. Based on publicly available information, since data became available in 2003, no DHS detainee death review has <u>ever</u> culminated in a administrative, civil, or criminal enforcement proceeding.

78. Even if such an investigation is currently ongoing, the agency's categorical application of Exemption 7(A) fails because not all documents can reasonably be expected to interfere with the investigation if released.

79. A large number of these documents are currently in the public domain as a result of the GBI's closure of its investigation and subsequent release, via the Georgia Open Records Act, of records its investigators gathered.

80. ICE's categorical withholding under Exemption 7(A) thus violates the agency's duty under FOIA to release reasonably segregable, non-exempt portions of responsive records, even if some documents are properly withheld. 5 U.S.C. § 552(b).

81. Plaintiff, through counsel, has exhausted his administrative remedies.

**COUNT TWO: VIOLATION OF THE FREEDOM OF INFORMATION ACT**
**5 U.S.C. § 552(a)(4)(B)**
2018-ICFO-00998 & 2018-ICFO-00999
Unlawful Withholding of Agency Records by ICE
Responsive to Plaintiff's October 3, 2017 Request for SDC Records

82. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

83. Plaintiff has a legal right under FOIA to timely search and release of responsive, non-exempt agency records responsive to his October 3, 2017 FOIA request, assigned by the agency tracking numbers 2018-ICFO-00998 and 2018-ICFO-00999.

84. No legal basis exists for ICE's failure to adequately and timely search for and release responsive agency records in compliance with FOIA's time limits.

85. ICE's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through declaration and injunction.

86. Because ICE has failed to comply with the Act's time limits, Plaintiff has constructively exhausted his administrative remedies.

COUNT THREE: VIOLATION OF THE FREEDOM OF INFORMATION ACT
5 U.S.C. § 552(a)(7)(A)
INDIVIDUALIZED TRACKING NUMBER REQUIREMENT
Unlawful Withholding of Agency Records by ICE
Responsive to Plaintiff's October 3, 2017 Request for SDC Records

87. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

88. ICE is under a legal duty to "provide each person making a request the tracking number assigned to the request. 5 U.S.C. § 552(a)(7)(A).

89. ICE violated this legal duty by failing to acknowledge Item 4 (IHSC Policies) from Plaintiff's October 3, 2017 request and assign it an individualized tracking number.

90. No legal basis exists for failing to assign this portion of Plaintiff's request a tracking number and timely process it.

91. ICE's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court should remedy through injunction.

92. Because ICE has failed to comply with the Act's time limits, Plaintiff has constructively exhausted his administrative remedies.

COUNT FOUR: VIOLATION OF THE FREEDOM OF INFORMATION ACT
5 U.S.C. § 552(a)(4)(B)
2018-IGFO-00007
Unlawful Withholding of Agency Records by DHS-OIG
Responsive to Plaintiff's October 16, 2017 Request

93. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

94. Plaintiff has a legal right under the FOIA to timely search and release of responsive, non-exempt agency records responsive to his October 16, 2017 FOIA request to DHS-OIG.

95. No legal basis exists for DHS-OIG's failure to adequately and timely search for and release responsive agency records in compliance with the FOIA's time limits.

96. DHS-OIG's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through declaration and injunction..

97. Because DHS-OIG has failed to comply with the Act's time limits, Plaintiff has constructively exhausted his administrative remedies.

**COUNT FIVE: VIOLATION OF THE FREEDOM OF INFORMATION ACT**
**5 U.S.C. § 552(a)(7)(A)**
INDIVIDUALIZED TRACKING NUMBER REQUIREMENT
Unlawful Withholding of Agency Records by DHS-CRCL
Responsive to Plaintiff's October 16, 2017 Requests for Records

98. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

99. DHS-CRCL is under a legal duty to "provide each person making a request the tracking number assigned to the request. 5 U.S.C. § 552(a)(7)(A).

100. DHS-CRCL violated this legal duty by failing to promptly acknowledge Plaintiff's October 16, 2017 requests and assign them individualized tracking numbers.

101. No legal basis exists for failing to assign Plaintiff's request a tracking number and timely process it.

102. DHS-CRCL's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through declaration and injunction.

103. Because DHS-CRCL has failed to comply with the Act's time limits, Plaintiff has constructively exhausted his administrative remedies.

**COUNT SIX: PETITION FOR WRIT OF MANDAMUS**
**28 U.S.C. § 1361**
TO COMPEL IHSC, THROUGH DEFENDANT SMITH,
TO RELEASE MR. JIMENEZ'S MEDICAL RECORDS

104. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

105. As personal representative of Mr. Jimenez, Plaintiff, the Administrator of Mr. Jimenez's Estate, has a clear legal right to access Mr. Jimenez's medical records to the same extent Mr. Jimenez could if he were alive, 45 C.F.R. §§ 164.502(g)(4), 164.524, and/or to receive a written, legally justified denial within thirty days of his request.

106. As a covered entity under HIPAA's Privacy Rule, IHSC owes a clear legal duty to Plaintiff to provide him access to Mr. Jimenez's medical records, or a written denial stating the legal basis for refusing to release records, within thirty days of Plaintiff's request. *See* 45 C.F.R. § 164.524.

107. No other adequate remedy, including a FOIA request, exists.

108. IHSC and ICE have denied Plaintiff access to Mr. Jimenez's medical records, or a legally grounded denial, as required by the Privacy Rule.

109. Plaintiff is currently suffering an ongoing legal injury and impairment to his right to access Mr. Jimenez's medical records as a result of the refusal to comply with the agency's mandatory duty under law.

**COUNT SEVEN: ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. §§ 702, 706(1)**
TO COMPEL ICE TO RELEASE MR. JIMENEZ'S MEDICAL RECORDS

44. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

45. ICE owes Plaintiff a legal duty to release Mr. Jimenez's unredacted medical records, subject to limited, regulatory restrictions. ICE Performance-Based National Detention Standards 2011 § 4.3.BB.2 (rev. 2016), 45 C.F.R. §§ 164.502(g)(4), 164.524.

46. ICE has unlawfully withheld and unreasonably delayed the legally mandated release of Mr. Jimenez's medical records to Plaintiff.

47. Plaintiff is within the zone of interests contemplated in the PBNDS and the Privacy Rule because he is a "designee" and a "personal representative" as referenced in these authorities.

48. Plaintiff is presently suffering ongoing injury through ICE's impairment of his legal right to Mr. Jimenez's medical record.

49. Plaintiff has no adequate administrative remedy through which he could exhaust his claim.

50. ICE's determination that Mr. Jimenez's medical records must be obtained through FOIA constitutes final agency action reviewable by this Court.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against all Defendants.

2. Declare Defendants' withholdings under the FOIA unlawful and enjoin these unlawful withholdings.

3. Order ICE and DHS-CRCL to assign Plaintiff's outstanding, unanswered requests an individualized tracking number within ten (10) days after receiving those Defendants' Answers to Plaintiff's Complaint.

4. Order Defendants to conduct a prompt an adequate search for all responsive records, determine which, if any portions of such records are exempt, and require Defendants to release the remaining portions of these agency records within sixty (60) days after receiving Defendants' Answers to Plaintiff's Complaint.

5. Declare that IHSC is a healthcare provider and "covered entity" within the meaning of 42 U.S.C. § 1320d(3) and the Privacy Rule.

6. Declare that Plaintiff may recover Mr. Jimenez's medical records outside of the FOIA process and pursuant to the process set forth at 45 C.F.R. § 164.524.

7.   Issue a Writ of Mandamus requiring Dr. Smith to release Mr. Jimenez's medical records to Plaintiff, or, in the alternative, to comply with the Privacy Rule's requirements for written denials.

8.   Order ICE to cease unlawfully withholding Mr. Jimenez's medical records from Plaintiff and release all records to which he is lawfully entitled.

9.   Award Plaintiff reasonable costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

10.   Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Date: February 8, 2018     Respectfully submitted,

/s/ R. Andrew Free
**R. ANDREW FREE, No. 30513**
P.O. Box 90568
Nashville, TN 37209
Tel. 844-321-3221
Fax: 615-829-8959
Andrew@immigrantcivilrights.com
*Counsel for the Plaintiff*