# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gilberto Rodriguez **CHAVERRA**, | ) | |
| | ) | |
| Plaintiff-Petitioner, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 1:18-cv-289-JEB** |
| | ) | |
| **U.S. IMMIGRATION AND CUSTOMS** | ) | Hon. James E. Boasberg |
| **ENFORCEMENT**, *et al*,, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . 2

I.  INTRODUCTION . . . . . . . . 6

II. LEGAL FRAMEWORK . . . . . . . 7
    A. HIPAA and The Privacy Rule . . . . . . 7
    B. Detainee Medical Records and the PBNDS . . . 10

III. FACTUAL ALLEGATIONS . . . . . . . 12
    A. Plaintiff's Complaint . . . . . . . 12
    B. Defendants' Partial Motion to Dismiss . . . 13

IV. LEGAL STANDARD . . . . . . . . 14

V.  ARGUMENT . . . . . . . . 14
    A. There Is No HIPAA Claim To Dismiss. . . . . 16
    B. Plaintiff Plausibly Pleads Entitlement to Mandamus Relief. . . 17
        1. IHSC is a "covered entity." . . . . . 18
        2. FOIA is not an adequate alternative remedy . . 20
        3. No sovereign immunity defense exists. . . . 20
    C. Plaintiff Plausibly Pleads Entitlement to Relief to APA Relief . . 21
    D. There is No FOIA Claim Against Dr. Smith to Dismiss . . 22

VI. CONCLUSION . . . . . . . . 22

TABLE OF AUTHORITIES

CASES:                                                                      PAGE:

*Aishat v. U.S. Dep't of Homeland Security,*
    288 F. Supp. 3d 261 (D.D.C. 2018)       .      .      .      .      .      .      .      14

*Amerada Hess Pipeline Corp. v. F.E.R.C.,*
    117 F.3d 596 (D.C. Cir. 1997)       .      .      .      .      .      .      .      19

*American Hospital Association v. Burwell,*
    812 F.3d 183 (D.C. Cir. 2016)       .      .      .      .      .      .      .      17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554 (2007)       .      .      .      .      .      .      .      .      12, 14

*Boling v. United States Parole Commission,*
    290 F. Supp. 3d 37 (D.D.C. 2017)  .      .      .      .      .      .      .      12

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988)       .      .      .      .      .      .      .      .      19

*\*Chamber of Commerce v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996)       .      .      .      .      .      .      .      16, 21

*Chen v. The GEO Group, Inc.,*
    287 F. Supp. 3d 1158 (W.D. Wash. 2017)  .      .      .      .      .      .      11

*Dugan v. Rank,*
    372 U.S. 609 (1963)       .      .      .      .      .      .      .      .      21

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005)       .      .      .      .      .      .      .      .      14

*Jerome Stevens Pharms., Inc. v. FDA,*
    402 F.3d 1249 (D.C. Cir. 2005)       .      .      .      .      .      .      .      14

*Judicial Watch, Inc. v. Nat'l Energy Pol'y Devel. Grp.,*
    219 F. Supp. 2d 20 (D.D.C. 2002)  .      .      .      .      .      .      .      16

*Kirwa v. United States Dep't of Defense,*
    285 F. Supp. 3d 257 (D.D.C. 2018)       .      .      .      .      .      .      .      20

*Larson v. Domestic & Foreign Commerce Corp.,*
    337 U.S. 682 (1949)       .      .      .      .      .      .      .      .      21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)       .      .      .      .      .      .      .      .      14

**CASES, CONT'D**:                                                              **PAGE:**

*Lyon v. U.S. Immigration and Customs Enforcement,*
308 F.R.D. 203 (N.D. Cal. 2015)   .   .   .   .   .   .   .   11

*Menocal v. The GEO Group, Inc.,*
    320 F.R.D. 258 (D. Colo. 2017)   .   .   .   .   .   .   11
    882 F.3d 905 (10th Cir. 2018)   .   .   .   .   .   .   11

*Sec'y of Labor v. Excel Mining, LLC,*
    334 F.3d 1 (D.C. Cir. 2003)   .   .   .   .   .   .   .   19

*Sparrow v. United Air Lines, Inc.,*
    216 F.3d 1111 (D.C. Cir. 2000)   .   .   .   .   .   .   14

*\*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996)   .   .   .   .   .   .   21

*Trudeau v. Federal Trade Commission,*
    456 F.3d 178 (D.C. Cir. 2006)   .   .   .   .   .   .   21

*Turner v. Beers,*
    5 F. Supp. 3d 115 (D.D.C. 2013)   .   .   .   .   .   .   14

*United States v. Monzel,*
    641 F.3d 528 (D.C. Cir. 2011)   .   .   .   .   .   .   17

*Village of Barrington, Ill. v. Surface Transp. Bd.,*
    636 F.3d 650 (D.C. Cir. 2011)   .   .   .   .   .   .   19

*Washington Legal Foundation v. United States Sentencing Commission,*
    89 F.3d 897 (D.C. Cir. 1996)   .   .   .   .   .   .   21

**STATUTES:**

5 U.S.C. § 552 .   .   .   .   .   .   .   .   .   .   6

5 U.S.C. § 552(b)(6)   .   .   .   .   .   .   .   .   19

5 U.S.C. § 552(b)(7)(C) .   .   .   .   .   .   .   .   20

5 U.S.C. § 552(b)(7)(E) .   .   .   .   .   .   .   .   20

5 U.S.C. § 702 .   .   .   .   .   .   .   .   .   .   20

42 U.S.C. § 300gg-91(a)(2)   .   .   .   .   .   .   .   8

42 U.S.C. § 1320d-2(d)(2)(A)   .   .   .   .   .   .   7

3

**STATUTES, CONT'D**:                                                                                          **PAGE:**

42 U.S.C. § 1320d(5)     .         .         .         .         .         .         .                    20

42 U.S.C. § 1395x(s)     .         .         .         .         .         .         .         .    8, 9, 18

42 U.S.C. § 1395x(s)(1).           .         .         .         .         .         .         .         9

42 U.S.C. § 1395x(s)(2)(M)         .         .         .         .         .         .         .         9

42 U.S.C. § 1395x(s)(2)(N)         .         .         .         .         .         .         .         9

42 U.S.C. § 1395x(s)(2(W)          .         .         .         .         .         .         .         9

42 U.S.C. § 1395x(u)     .         .         .         .         .         .         .         .    8, 18

Health Insurance Portability and Accountability Act of 1996,
     Pub. L. No. 104-191   .         .         .         .         .         .         .         .    *passim*

Department of Homeland Security Appropriations Act of 2016,
     Pub. L. No. 114-113   .         .         .         .         .         .         .         .         10

**REGULATIONS:**

45 C.F.R. § 160.103      .         .         .         .         .         .         .         .    8, 9, 10, 18

45 C.F.R. § 162.1101(a)            .         .         .         .         .         .         .         9

45 C.F.R. § 162.1101(b)            .         .         .         .         .         .         .    10, 18

45 C.F.R. § 162.1201     .         .         .         .         .         .         .         .         9

45 C.F.R. § 162.1301     .         .         .         .         .         .         .         .         9

45 C.F.R. § 162.1401     .         .         .         .         .         .         .         .         9

45 C.F.R. § 162.1501     .         .         .         .         .         .         .         .         9

45 C.F.R. § 162.1601     .         .         .         .         .         .         .         .    9, 10

45 C.F.R. § 162.1701     .         .         .         .         .         .         .         .         9

45 C.F.R. § 162.1801     .         .         .         .         .         .         .         .         9

45 C.F.R. § 164.502(g)(1)          .         .         .         .         .         .         .    8, 18

45 C.F.R. § 164.502(g)(4)          .         .         .         .         .         .         .    8, 18

REGULATIONS, CONT'D:                                                                  PAGE:

45 C.F.R. § 164.524(a)(1)      .      .      .      .      .      .      .      .      .      .      8, 20

45 C.F.R. § 164.524(a)(2)      .      .      .      .      .      .      .      .      .      8

45 C.F.R. § 164.524(a)(3)      .      .      .      .      .      .      .      .      .      8

45 C.F.R. § 164.524(b)(1)      .      .      .      .      .      .      .      .      .      .      8, 15

45 C.F.R. § 164.524(b)(2)      .      .      .      .      .      .      .      .      .      8

45 C.F.R. § 164.524(c)  .      .      .      .      .      .      .      .      .      8

45 C.F.R. § 164.524(d)  .      .      .      .      .      .      .      .      .      8

45 C.F.R. § 164.524(d)(2)      .      .      .      .      .      .      .      .      .      8

45 C.F.R. § 164.524(e)  .      .      .      .      .      .      .      .      .      8

RULES

FED. R. CIV. P. 12(b)(1)      .      .      .      .      .      .      .      .      .      .      13, 14

FED. R. CIV. P. 12(b)(6)      .      .      .      .      .      .      .      .      .      .      13, 14

OTHER AUTHORITIES:

Notice of Modified Privacy Act System of Records, 83 Fed. Reg. 12015, 12016
    (Mar. 19, 2018)      .      .      .      .      .      .      .      .      .      19

U.S. Dep't of Health & Human Services, Office for Civil Rights, "The HIPPA
    Privacy Rule" (Apr. 16, 2015)      .      .      .      .      .      .      .      7

U.S. Dep't of Health & Human Services., Office of Civil Rights, "Summary of HIPAA
    Privacy Rule" (Jul. 26, 2013)      .      .      .      .      .      .      .      7

U.S. Dep't of Homeland Security, Privacy Impact Assessment Update, "electronic
    Health Records (eHR) System," DHS/ICE/PIA-037(a) (Apr. 26, 2018)      .      .      12

*U.S. Immigration and Customs Enforcement, 2011 Operations Manual Performance-
    Based National Detention Standards (revised Dec. 2016)      .      .      .      .      *passim*

U.S. Immigration and Customs Enforcement, "Progress in Implementing 2011
    PBNDS Standards and DHS PREA Requirements at Detention Facilities"      10

Centers for Medicare and Medicaid Services, "Administrative Simplification: Covered
    Entity Guidance" (Jun. 17, 2016)      .      .      .      .      .      .      .      9

## I. INTRODUCTION

Tens of thousands of people receive government-provided medical and mental health care inside the nation's approximately 140 immigration detention facilities each day. Many of those people understandably want access to their medical records. U.S. Immigration and Customs Enforcement ("ICE") detention standards mandate that people who are still locked up get a free, unredacted copy of their medical records promptly upon written request to ICE's Immigrant Health Services Corps ("IHSC"). The same ICE detention standards require IHSC to provide all people who get released with a free, detailed medical care summary upon release, along with information about how to get their full records directly from the last facility that held them. ICE requires none of these individuals – be they presently detained or recently released – to obtain their medical records exclusively through the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In fact, IHSC recently announced an online portal allowing recently released individuals to access their electronic medical records online.

The only people who are *not* entitled to unredacted IHSC medical records upon request, according to Defendants, are those who do not make it out of ICE's jails alive. The government contends that for personal representatives of the growing population of people who die in ICE custody, FOIA is the sole means of obtaining records about the medical care ICE provided—or did not provide—before death. ICE thus arrogates to itself the power to withhold vital medical information pursuant to FOIA's various statutory exemptions, and to trump the normal standards by which detained individuals seek and obtain their medical records with an ad hoc policy.

Defendants' position is not just self-serving; it is devoid of legal authority. No regulation or sub-regulatory rule requires it. It runs counter to the individual right of access to most medical records created by Department of Health and Human Services' privacy regulations. And it violates the binding requirements of the agency's own policy manual. ICE's denial of medical records to families

and personal representatives of those who perish in the agency's custody is thus arbitrary, capricious, and contrary to law.

Gilberto Chavarria ("Plaintiff") challenges this denial in Counts Six and Seven of his Complaint. The question before the Court on Defendants' Partial Motion to Dismiss is whether Plaintiff plausibly pleads jurisdiction over and entitlement to a writ of mandamus or declaratory and injunctive relief under the Administrative Procedure Act. Because Plaintiff has done so, Defendants' motion must be denied.

## II.  LEGAL FRAMEWORK

### A.  HIPAA and the Privacy Rule

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, "authorized the Secretary of the Department of Health and Human Services ['HHS"] to promulgate rules and regulations which would ensure the privacy of patients' medical information." 42 U.S.C. § 1320d-2(d)(2)(A). HHS exercised this authority when promulgating Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. § 160 and Subparts A and E of 45 C.F.R. § 164, known as the "Privacy Rule." "The Privacy Rule sets uniform national standards for health plans, healthcare clearinghouses, and health care providers conducting certain health care transactions electronically." *See generally* U.S. Dep't of Health & Human Services, Office for Civil Rights, "The HIPPA Privacy Rule" (Apr. 16, 2015) *available at* https://www.hhs.gov/hipaa/for-professionals/privacy/index.html (last visited Jun. 10, 2018). It "gives patients rights over their health information, including rights to examine and obtain a copy of their health records, and to request corrections." *Id.* And it serves as a critical tool "to assure that individuals' health information is properly protected while allowing the flow of health information needed to provide and promote high quality health care and to protect the public's health and well-being." U.S. Dep't of Health & Human Servs., Office of Civil Rights, "Summary of HIPAA Privacy Rule" (Jul. 26, 2013) *available at*

https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last visited

Jun. 10, 2018).

The Privacy Rule creates an individual right of access "to inspect and obtain a copy of" one's

own medical records. 45 C.F.R. § 164.524(a)(1). The right to access an individual's medical records

extends to her "personal representative," 45 C.F.R. § 164.502(g)(1), including, in the case of

deceased individuals, the administrator of the person's estate. 45 C.F.R. § 164.502(g)(4). Subject to

specific, enumerated exceptions, *see* 45 C.F.R. §§ 164.524(a)(1)(i)-(ii), (a)(2)-(3), "covered entities"

"must permit an individual to request access to inspect or to obtain a copy of" their medical records.

45 C.F.R. § 164.524(b)(1). In most cases, covered entities must respond to the request within thirty

days. 45 C.F.R. § 164.524(b)(2). When a covered entity denies a records request, it must do so in

writing, explain its reasons, and explain the rights of review and complaint available to individuals

wishing to challenge the denial. 45 C.F.R. § 164.524(d)(2). By its terms, the Privacy Rule imposes the

duty to comply with individual demands for access to medical records only upon "covered entities."

45 C.F.R. §§ 164.524(b)-(e).

The Privacy Rule defines three types of "covered entities": (1) health plans; (2) health care

clearinghouses; and (3) health care providers who transmit any health information in electronic form

in connection certain covered transactions. 45 C.F.R. § 160.103. A "health plan" means an individual

or group plan that provides, or pays the cost of, medical care (as defined in Section 2791(a)(2) of the

PHS Act, 42 U.S.C. § 300gg-91(a)(2)." 45 C.F.R. § 160.103. The regulatory definition of "health

plan" specifically excludes government-funded programs whose principle activity is the direct

provision of health care to people. 45 C.F.R. § 160.103.

"Health care providers" must meet several criteria to count as "covered entities" under the

Privacy Rule. *First*, they must be "a provider of services" (as defined in 42 U.S.C. § 1395x(u)), a

provider of "medical or health services" (as defined in 42 U.S.C. § 1395x(s)), or any other person or

organization who furnishes, bills, or is paid for health care in the normal course of business. 45 C.F.R. § 160.103. The statutory definition of "medical and other health services" includes physicians' services, qualified psychologist services, clinical social worker services, and initial preventive examinations. 42 U.S.C. §§ 1395x(s)(1), (2)(M), 2(N), 2(W).

*Second*, health care providers must transmit health information in electronic form in connection with a covered transaction in order to qualify as "covered entities". *See* 45 C.F.R. § 160.103. The Privacy Rule defines a covered "transaction" as "the transmission of information between two parties to carry out financial or administrative activities related to health care." *Id.* The regulatory definition sets forth twelve types of information transmission that fall within the definition of a covered "transaction". They are: (1) Health care claims or equivalent encounter information; (2) Health care payment and remittance advice; (3) Coordination of benefits; (4) Health care claim status; (5) Enrollment and disenrollment in a health plan; (6) Eligibility for a health plan; (7) Health plan premium payments; (8) Referral certification and authorization; (9) First report of injury; (10) Health claims attachments; (11) Health care electronic funds transfers (EFT) and remittance advice; (12) Other transactions that the Secretary may prescribe by regulation. 45 C.F.R. § 160.103. Almost all of these twelve types of information transmission are defined elsewhere in the so-called Administrative Simplification regulations implementing HIPAA.[1]

Though nearly all of the twelve enumerated "transactions" presume some type of electronic communication between a health care provider and a health plan, some do not. *Compare* 45 C.F.R. § 162.1101(a) (health care claims), 45 C.F.R. § 162.1801 (coordination of benefits), 45 C.F.R. § 162.1401 (health care claim status), 45 C.F.R. § 162.1501 (enrollment and disenrollment in a health

---

[1] *See* Centers for Medicare and Medicaid Services, "Administrative Simplification: Covered Entity Guidance" at 52-55 https://www.cms.gov/Regulations-and-Guidance/Administrative-Simplification/HIPAA-ACA/Downloads/CoveredEntitiesChart20160617.pdf (last visited Jun. 10, 2018).

care plan), 45 C.F.R. § 162.1201 (eligibility for a health care plan), 45 C.F.R. § 162.1701 (health plan premium payments), 45 C.F.R. § 162.1301 (referral and certification authorization), and 45 C.F.R. § 162.1601 (health care electronic funds transfer and remittance advice) *with* 45 C.F.R. § 162.1101(b) (equivalent encounter information), and 45 C.F.R. § 160.103 "transactions" definition subparagraph (9) (first report of injury).

One type of enumerated electronic transmission of information that does not require a health plan to be a party is "equivalent encounter information." Where no direct claim for payment to a health plan exists "because the reimbursement contract is based on a mechanism other than charges or reimbursement rates for specific services, the transaction is the transmission of encounter information for the purpose of reporting health care." 45 C.F.R. § 162.1101(b). As in the case of "first injury reports" from health care providers to worker's compensation authorities, the plain language of HHS's "transaction" definition does not require a health care plan to be a party to the transmission of information. 45 C.F.R. § 160.103.

### B. Detainee Medical Records and the PBNDS

The 2011 Performance-Based National Detention Standards ("PBNDS") are sub-regulatory agency rules governing the detention of persons in ICE custody. *See* U.S. Immigration and Customs Enforcement, 2011 Operations Manual Performance-Based National Detention Standards (rev. Dec. 2016) *available at* https://www.ice.gov/detention-standards/2011 (last visited Jun. 10, 2018). Though ICE adopted the PBNDS without notice-and-comment rulemaking, the agency treats these standards as binding on contractors and must report its progress in implementation periodically to Congress as a result of appropriations requirements. *See, e.g.*, U.S. Immigration and Customs Enforcement, "Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities" FY2016 Report to Congress at 1-3 (Jan. 17, 2017) *available at* https://www.dhs.gov/sites/default/files/publications/ICE%20- %20Progress%

20in%20Implementing%202011%20PBNDS%20Standards.pdf (last visited Jun. 10, 2018) (citing

House Report 114-215 accompanying FY16 Department of Homeland Security Appropriations Act,

P.L. 114-113). Courts likewise treat the PBNDS as authoritative statements of agency policy

governing immigration detention. *See, e.g.*, *Chen v. The GEO Group, Inc.*, 287 F. Supp. 3d 1158 (W.D.

Wash. 2017); *Menocal v. The GEO Group, Inc.*, 320 F.R.D. 258, 262 (D. Colo. 2017), *aff'd* 882 F.3d 905

(10th Cir. 2018); *Lyon v. U.S. Immigration and Customs Enforcement*, 308 F.R.D. 203, 207 (N.D. Cal.

2015).

Section 4.3 of the 2011 PBNDS sets forth standards for medical care, including access to

detainee medical records by people who are or were in ICE detention. *See* https://www.ice.

gov/doclib/detention-standards/2011/4-3.pdf. Among the 30 "Expected Outcomes" of Section 4.3

is that "[d]etainees, who have received medical care . . . shall receive . . . a summary of medical

records" upon their release or removal. PBNDS 4.3.II.5. The specific standard governing

Confidentiality and Release of Medical Records states: "Detainees who indicate they wish to obtain

copies of their medical records shall be provided with the appropriate request form." PBNDS

4.3.V.BB.2. It continues:

> Upon his/her request, while in detention, a detainee or his/her designated representative
> shall receive information from their medical records. Copies of health records shall be
> released by the HSA directly to a detainee or their designee, at no cost to the detainee,
> within a reasonable timeframe after receipt.

PBNDS 4.3.V.BB.2. When ICE releases an individual from custody, IHSC must provide a detailed

medical care summary:

> Upon removal or release from ICE custody, the detainee shall be provided . . . a detailed
> medical care summary. This summary should include . . . at a minimum . . . c) current
> mental, dental, and physical health status, including all significant health issues, and
> highlighting any potential unstable issues or conditions which require urgent follow-up; .
> . . e) any past hospitalizations or major surgical procedures; f) recent test results, as
> appropriate; . . . [and] h) any pending medical or mental health evaluations, tests,
> procedures, or treatments for a serious medical condition scheduled for the detainee at
> the sending facility.

PBNDS 4.3.V.BB.2.c.2.

IHSC recently announced its intention to make electronic medical records available to formerly detained immigrants available online using a "Patient Medical Record Portal." *See* Dep't of Homeland Security, Privacy Impact Assessment Update, "electronic Health Records (eHR) System," DHS/ICE/PIA-037(a) at 1 (Apr. 26, 2018) *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-ehr-april2018.pdf  (last visited Jun. 23, 2018).

## III. FACTUAL ALLEGATIONS[2]

### A.  Plaintiff's Complaint

On May 15, 2017, Jeancarlo Alfonso Jimenez Joseph ("Mr. Jimenez"), a 27 year-old recipient of Deferred Action for Childhood Arrivals ("DACA"), died in solitary confinement while in ICE custody at the privately owned and operated Stewart Detention Center ("SDC") in Lumpkin, Georgia. Complaint, ECF No. 3-1, ¶ 2. ICE immediately identified Mr. Jimenez upon arrival and booking at SDC as a suicide risk with a documented history of schizophrenia, suicidal ideation, and multiple prior involuntary commitments. Compl. ¶ 3. Days before his death, Mr. Jimenez informed ICE medical personnel that the voices in his head were telling him to kill himself. Compl. ¶ 6. Mr. Jimenez begged for an upward adjustment to his anti-psychotic medication. *Id.* Yet officials never placed Mr. Jimenez on suicide watch or provided him emergency psychiatric intervention while he was in solitary confinement. *Id.*

Plaintiff Gilberto Chavarria is the Administrator of Mr. Jimenez's estate. Compl. ¶ 6. On or about September 22, 2017, Plaintiff, through counsel, attempted to request Mr. Jimenez's medical

---

[2] In the interest of efficiency, Plaintiff highlights the specific factual allegations that demonstrate subject-matter jurisdiction over and plausible entitlement to relief on Counts Six (mandamus) and Seven (APA) of his Complaint. The Court must "consider the complaint in its entirety[.]" *Boling v. United States Parole Commission*, 290 F. Supp. 3d 37, 45 (D.D.C. 2017) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556-67 (2007)). And it must "take *all* factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).

records from the IHSC official in charge of SDC. Compl. ¶ 68. In response, Plaintiff's counsel

received a call, followed by several subsequent written communications, from ICE District Court

Litigation Division ("DCLD") counsel advising that the agency would only provide Mr. Jimenez's

medical records through FOIA. Compl. ¶ 69. ICE DCLD advised Plaintiff, through counsel, that

there was no mechanism other than FOIA for appealing this determination. Compl. ¶ 70. On

February 6, 2018, ICE DCLD confirmed to Plaintiff's counsel in writing the agency's position that

FOIA is the sole mechanism through which Plaintiff can secure Mr. Jimenez's medical records from

ICE. Comp. ¶ 71. *See also* Compl. ¶ 18.

Defendant Dr. Stewart D. Smith is the Assistant Director of IHSC. Compl. ¶ 27. IHSC provides

direct care to approximately 13,500 detained people housed at 21 designated facilities throughout the

nation to include medical, dental, and mental health care, and public health services. Compl. ¶ 28.

IHSC also provides medical case management and oversight for an additional 15,000 detained

immigrants house at approximately 119 non-IHSC staffed detention facilities across the country.

Compl. ¶ 29. IHSC oversees the financial authorization and payment for off-site specialty and

emergency care services for detained immigrants in ICE custody. Compl. ¶ 30. IHSC is a health care

provider, Compl. ¶ 31, and transmits ICE detainee health information in electronic form in

connection with transactions. Compl. ¶ 32.

### B.  Defendants' Partial Motion to Dismiss

In their Partial Motion to Dismiss, Defendants present several unsworn factual averments

through their counsel. Specifically, Defendants contend:

> [1] ICE provides direct health care to aliens in its custody (detainees); [2] ICE does
> not bill the alien or a health insurance plan or policy for that care. [3] ICE pays
> directly for outside medical care for detainees; [4] ICE does not do so through a
> health insurance plan or policy.

ECF No. 9 at 6.

## IV. LEGAL STANDARD

In evaluating a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true[.]" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). Because "pleading rules are "not meant to impose a great burden upon a plaintiff," *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), Plaintiff "must thus be given every favorable inference that may be drawn from the allegations of fact." *Aishat v. U.S. Dep't of Homeland Security*, 288 F. Supp. 3d 261, 265 (D.D.C. 2018) (citing *Sparrow*, 216 F.3d at 1113).

Plaintiff bears the burden of proving subject-matter jurisdiction when confronted with a motion to dismiss under Fed. R. Civ. P. 12(b)(1). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Court may look to materials outside the pleadings in deciding whether it possesses subject-matter jurisdiction over a claim. *Turner v. Beers*, 5 F. Supp. 3d 115, 117-18 (D.D.C. 2013) (citing *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

To survive dismissal under Rule 12(b)(6),  "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Aishat*, 288 F. Supp. 3d at 265 (quoting *Iqbal*, 556 U.S. at 678). A plaintiff's complaint may proceed notwithstanding a 12(b)(6) challenge "even if recovery is very remote and unlikely" so long as "the facts alleged in the complaint . . . raise a right to relief above the speculative level." *Aishat*, 288 F. Supp. 3d at 265 (quoting *Twombly*, 550 U.S. at 555-56).

## V. ARGUMENT

This Court should deny Defendants' partial motion to dismiss because the well-pleaded factual allegations of Plaintiff's Complaint establish subject-matter jurisdiction and a plausible right to mandamus and APA relief. Defendants seek dismissal of Counts Six and Seven of Plaintiff's Complaint, as well as two claims Plaintiff does not raise. Dismissal of Plaintiff's mandamus claim is inappropriate at this stage because Plaintiff plausibly alleges IHSC is a "covered entity," and thus,

subject to the individual access requirements of the HIPAA Privacy Rule. Nothing in Defendants' motion – including the conclusory factual assertions in Defendant's brief – overcomes these well-pleaded allegations. In addition, dismissal of Plaintiff's APA claim is inappropriate at this stage because ICE's own binding agency policy requires detainees to be afforded an unredacted medical care summary upon their release from custody, and IHSC's establishment of an Patient Medical Records Portal destroys any claim by ICE that FOIA is the exclusive channel for obtaining such records.

With respect to Plaintiff's mandamus claim (Count Six), because Plaintiff adequately pleads that IHSC is a covered entity, he raises a clear and indisputable right to relief – namely, the prompt release of Mr. Jimenez's unredacted medical records or a lawful justification for their withholding in accordance with 45 C.F.R. § 164.524(b). Dr. Smith is the government official charged with the non-discretionary duty to disclose those records, and he is violating his duty to release them. FOIA does not provide an adequate alternative remedy because it allows Defendants to permanently withhold all or part of Mr. Jimenez's medical records by claiming, as they have to date, that these records fall within one or more of FOIA's statutory exemptions. Finally, Plaintiff's well-pleaded allegations regarding the extraordinary circumstances surrounding Mr. Jimenez's detention and death give rise to a plausible claim that this Court should exercise its discretion to grant the extraordinary remedy of mandamus.

With respect to Plaintiff's APA claim (Count Seven), ICE's actions in refusing to provide Mr. Jimenez's unredacted medical records upon request violate both the Privacy Rule and the mandatory disclosure provisions of the PBNDS. The agency's justification that FOIA is the only vehicle to obtain such records flies in the face of the agency's own binding operating manual and IHSC's establishment of an online portal to obtain the records. ICE's attempt to single out the personal representatives of people who die in its custody as the only people who must go through FOIA to

get complete, unredacted medical records, or, at the very least, a medical records summary, is thus arbitrary, capricious, and contrary to law.

**A.   <u>There is No HIPAA Claim to Dismiss</u>.**

The government moves to dismiss a HIPAA claim that does not exist. ECF No. 9 at 4-6. Plaintiff's Complaint enumerates each of the seven causes of action that give rise to his requests for relief. Corrected Complaint, ECF No. 3-1 at 12-17 (¶¶ 72-116). No cause of action alleges or implies that HIPAA itself grants Plaintiff a private right of action. *Id.* Rather, Plaintiff relies upon the HIPAA Privacy Rule to establish the clear legal duty Defendant Smith owes Mr. Jimenez's estate and legal representative—an essential element of his mandamus claim found in Count Six, and his APA claim found in Count Seven. Defendants' contention that "Plaintiff's purported HIPAA claim should be dismissed because HIPAA does not provide a private right of action" misconstrues Plaintiff's well-pleaded allegations and ignores the enumerated claims for relief.

While Defendants are correct that HIPAA does not contain a private right of action, it does not follow that Plaintiff may not compel compliance with the Privacy Rule through mandamus or the APA. *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). In *Reich*, the D.C. Circuit held that although the National Labor Relations Act did not afford a direct right of action for plaintiffs challenging an executive order, non-statutory review in the form of mandamus was nonetheless available. *Judicial Watch, Inc. v. Nat'l Energy Pol'y Devel. Grp.*, 219 F. Supp. 2d 20, 41 (D.D.C. 2002) (Sullivan, J.) (citing *Reich*, 74 F.3d at 1327). *Reich* thus stands for the proposition that the "mandamus statute may provide an avenue to remedy violations of statutory duties even where the statute that creates the duty does not contain a private cause of action." *Judicial Watch*, 219 F. Supp. 2d at 42

Here, Plaintiff uses the Mandamus and Venue Act of 1962 to challenge ICE's failure to comply with HIPAA's implementing regulations. As in *Reich* and *Judicial Watch*, the absence of a private right

of action in HIPAA does not preclude mandamus relief for the obligations it creates. Similarly, HIPAA's Privacy Rule may be used to establish the "law" ICE is violating for the purpose of APA relief. Accordingly, Defendant's Partial Motion to Dismiss Plaintiff's non-existent HIPAA claim should be denied.

**B.** **Plaintiff Plausibly Pleads Entitlement to Mandamus Relief**.

The court should likewise deny the government's motion to dismiss Plaintiff's mandamus claim against IHSC, by and through Dr. Smith in his official capacity. ECF No. 9 at 9-10. To show entitlement to mandamus, Plaintiff must plausibly plead: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *American Hospital Association v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (citing *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011)). These three elements are jurisdictional. *Id.* Even when all three elements are satisfied, the Court must also find compelling equitable grounds exist before granting relief. *Id.* Plaintiff submits that because such equitable grounds will necessarily turn on the Court's assessment of the facts, dismissal for lack of subject-matter jurisdiction based on equitable considerations would be inappropriate.

The mandamus relief Plaintiff seeks against Dr. Smith in Count Six is the prompt release of a full and unredacted copy of Mr. Jimenez's IHSC medical records in accordance with the Privacy Rule's individual right of access. Compl., ECF No. 3-1, ¶¶ 34, 68-71, 105-109 and Requests for Relief ¶¶ 6-8. In seeking dismissal, the government maintains that because Plaintiff could obtain Mr. Jimenez's medical records through FOIA, an adequate alternative remedy exists. Specifically, the government contends "Plaintiff cannot claim that he is entitled to the records he seeks outside of the procedures set forth under FOIA, by which he may request them." ECF No. 9 at 7. The government also contends that it is not a covered entity because ICE health services are not provided pursuant to a health plan, and that sovereign immunity bars Plaintiff's claim.

17

1.   IHSC is a "Covered Entity."

Mr. Chavarria plausibly pleads a clear and indisputable right to mandamus relief. Had he survived his time in ICE custody, Mr. Jimenez would have had direct access to his complete and unredacted IHSC medical records from SDC, or, at the very least, a medical records summary. *See* ICE PBNDS 2011 § 4.3.V.BB.2. Mr. Jimenez's right of access applies with full force to Plaintiff, who is the Administrator of his estate. 45 C.F.R. §§ 164.502(g)(1), (g)(4). The dispositive question is therefore whether IHSC is a "covered entity" under the Privacy Rule. Based on Plaintiffs' well-pleaded factual allegations, the Court should conclude that it is.

Plaintiff contends IHSC is a "covered entity" because it is a "health care provider," 45 C.F.R. §§ 160.103, that transmits health information in electronic form in connection with "transactions" defined in 45 C.F.R § 160.103.[3] Compl. ¶¶ 28-34. As a factual matter, Plaintiff pleads that "IHSC provides direct care to approximately 13,500 detainees housed at 21 designated facilities throughout the Nation to include medical, dental, and mental health care, and public health services." Compl. ¶ 28. This allegation establishes the "health care provider" prong of the Privacy Rule's covered entity definition. *See* 42 U.S.C. §§ 1395x(s), 1395(u), 45 C.F.R. § 160.103. Plaintiff further alleges as a factual matter that IHSC oversees the financial authorization and payment for off-site specialty and emergency care services for detainees in ICE custody, Compl. ¶ 30, and that IHSC "transmits ICE detainee health information in electronic form in connection with 'transactions' defined in 45 [C.F.R.] § 160.103." Compl. ¶ 32. Plaintiff's complaint also offers links to IHSC's Medical Payment Authorization Request Form in connection with this allegation. Compl. At 7 n. 12. Defendant, on the other hand, contends IHSC is not a "covered entity" because it does not bill a health plan or policy in connection with the care it provides. ECF No. 9 at 6.

---

[3] Plaintiff's Complaint incorrectly cites to the relevant portions of the Privacy Rule as "45 **U.S.C.** §§ 160.103, 164.502 and 164.524" rather than 45 **C.F.R.** §§ 160.103, 164.502 and 164.524.

Taking Plaintiff's well-pleaded allegations as true and drawing all reasonable inferences in his favor, this Court can conclude that IHSC is plausibly a covered entity because it transmits ICE detainee health information in electronic form in connection with one or more enumerated transactions. Specifically, IHSC transmits "equivalent encounter information" contemplated by 45 C.F.R. §§ 160.103 and 162.1101(b) when it sends and receives patient information to outside providers and emergency rooms in order to document and carry out payment. Compl. ¶ 30 & n.12. The absence of a health plan or policy as a party to these transmissions does not exclude IHSC from coverage because HHS regulations contemplate "equivalent" transactions that include alternative reimbursement or payment schemes. *Id.* Thus, IHSC is a covered entity, and Mr. Chavarria has an individual right of access to Mr. Jimenez's medical records.

ICE's contention to the contrary is unavailing. As an initial matter, ICE's interpretation of its obligations under HIPAA is not entitled to any form of deference because it is not the agency Congress tasked with administering the statute. *See Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 7 (D.C. Cir. 2003); *Amerada Hess Pipeline Corp. v. F.E.R.C.*, 117 F.3d 596, 601 (D.C. Cir. 1997). The interpretation is also suspect because IHSC raises it for the first time in this litigation, and it conflicts with prior agency rationales for which IHSC is not a HIPAA-covered entity. *Compare* ECF 9 at 6 *with* Notice of Modified Privacy Act System of Records, 83 Fed. Reg. 12015, 12016 (Mar. 19, 2018) ("IHSC does not meet the statutory definition of a covered plan under HIPAA, 42 U.S.C. 1320d(5), and is specifically excluded from the application of HIPAA as a "government funded program . . . [w]hose principal activity is [t]he direct provision of healthcare to persons," 45 CFR 160.103 (definition of a health plan))."). *See Village of Barrington, Ill. v. Surface Transp. Bd.*, 636 F.3d 650, 661 (D.C. Cir. 2011) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988)).

As to the substance of ICE's claim that it is not a covered entity, the agency rests its motion entirely on the fact that it does not bill individuals or a health insurance plan or policy for care. ECF

No. 9 at 6. Even if that is true—there is no evidence other than the information in Defendants' brief at this point—it is not dispositive. If IHSC electronically transmits patient information in connection with equivalent transactions as defined by the Privacy Rule, it is a covered entity. The form and accompanying instructions Plaintiff cites at Footnote 12 suggests that this is the case. Because the well-pleaded allegations and IHSC documents cited in Plaintiff's Complaint could allow a trier of fact to conclude ICE conducts equivalent transactions, Defendants' motion must be denied.

2.   FOIA is not an adequate alternative remedy.

The Freedom of Information Act does not provide an adequate alternative remedy to mandamus relief for the purpose of obtaining Mr. Jimenez's complete, unredacted medical records. As demonstrated by the long and continuing failure of ICE to respond to Plaintiff's FOIA requests, FOIA is inadequate because it does not afford him timely access to Mr. Jimenez's complete, unredacted medical records. Instead, as noted in ICE's FOIA denials to date, FOIA allows ICE to permanently withhold the names of medical providers, 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and communications the agency might deem to be law-enforcement sensitive. 5 U.S.C. § 552(b)(7)(E). FOIA thus stands in stark contrast to the individual right of timely access the Privacy Rule affords Plaintiff as Mr. Jimenez's personal representative. *See generally* 45 C.F.R. §§ 164.524(a)(1), (b). At this stage, in light of the government's position as to Plaintiff's APA and FOIA claims, it would be premature to conclude that FOIA constitutes an adequate alternative remedy and dismiss Plaintiff's mandamus claim. *See Kirwa v. United States Dep't of Defense*, 285 F. Supp. 3d 257, 275-76 (D.D.C. 2018) (Huvelle, J.).

3.   No sovereign immunity defense exists.

None of Plaintiff's claims implicates the sovereign immunity of the United States. Defendants' claim that Plaintiff fails to state a claim that waives sovereign immunity is flatly incorrect as a matter

of law. ECF No. 9 at 8. While neither the federal question statute nor the mandamus statute by itself waives sovereign immunity, the *Larson-Dugan* exception holds suits can proceed against federal officers who are alleged to have exceeded their legal authority. *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949) and *Dugan v. Rank*, 372 U.S. 609, 621-23 (1963)). *See also Washington Legal Foundation v. United States Sentencing Commission*, 89 F.3d 897, 901 (D.C. Cir. 1996) (citing *Reich*, 74 F.3d at 1329)). And as the D.C. Circuit held in *Reich*, "the APA's waiver of sovereign immunity applies to any suit whether under the APA or not." 74 F.3d at 1328 (citing 5 U.S.C. § 702). *See also Trudeau v. Federal Trade Commission*, 456 F.3d 178, 186 (D.C. Cir. 2006). Defendants' sovereign immunity defense is meritless.

### C. **Plaintiff Plausibly Pleads Entitlement to APA Relief.**

Defendants' motion to dismiss Count Seven of Plaintiff's complaint should be denied because ICE's claim that FOIA is the sole means for Plaintiff to obtain Mr. Jimenez's unredacted medical contradicts the agency's own binding sub-regulatory rules and IHSC's announcement of a patient medical records portal. In the event the Court concludes that the mandamus remedy is inappropriate, Plaintiff pleads the agency's failure to disclose Mr. Jimenez's medical records constitutes agency action contrary to law — namely, the HIPAA Privacy Rule's individual access process. For the same reasons Plaintiff has plausibly pleased Defendant Smith's liability under the mandamus statute, Plaintiff likewise plausibly pleads ICE is acting contrary to law by failing to release Mr. Jimenez's complete medical records to Plaintiff in accordance with the Privacy Rule.

Moreover, ICE is acting arbitrarily and capriciously by failing to follow its own sub-regulatory guidelines set forth in Section 4.3. of the PBNDS. The PBNDS entitles people in detention access to their unredacted medical records while they are detained, and a medical care summary upon release. Compl. ¶ 111, (citing PBNDS § 4.3.V.BB.2.) Nowhere in the PBNDS does ICE mandate that FOIA is the exclusive remedy for obtaining these records. Indeed, if that were true, IHSC would not be

announcing the creation of an online medical records portal that "permits individuals discharged from IHSC-staffed detention facilities (hereafter "former detainees") to access a read-only PDF copy of their medical record online. DHS/ICE/PIA-037(a) at 1 *available at* https://www.dhs.gov/ sites/default/files/ publications/privacy-pia-ice-ehr-april2018.pdf (Apr. 26, 2018). Plaintiff thus plausibly pleads that ICE's adoption of FOIA as the sole avenue for a personal representative to vindicate the rights of formerly detained persons under HIPAA and the PBNDS is arbitrary, capricious, and contrary to law. As such, Defendants' motion to dismiss Count Seven of the Complaint should be denied.

**D.   There is No FOIA Claim Against Dr. Smith to Dismiss.**

Finally, Dr. Smith's motion to dismiss an imagined FOIA claim against him should be denied because, like the HIPAA claim Defendants challenge, no such claim exists. Dr. Smith contends "Plaintiff cannot state a claim against him under the FOIA[.]" ECF No. 9 at 9. Dr. Smith is correct. And that is exactly why Plaintiff did not sue Dr. Smith for violating FOIA. The only claim against Dr. Smith is Count Six – the mandamus claim. Accordingly, Dr. Smith's motion to dismiss a non-existent FOIA claim against him should be denied.

VI. **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss Counts Six and Seven of Plaintiff's Complaint, as well as the phantom claims Plaintiff did not bring, should be denied.

Date: June 25, 2018                    Respectfully submitted,

                                       /s/ R. Andrew Free
                                       **R. ANDREW FREE, No. 30513**
                                       P.O. Box 90568
                                       Nashville, TN 37209
                                       Tel. 844-321-3221x1
                                       Fax: 615-829-8959
                                       Andrew@immigrantcivilrights.com
                                       *Counsel for the Plaintiff*