**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| GILBERTO RODRIGUEZ CHAVERRA ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No.: 1:18-cv-289-JEB |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

## Introduction

Upon receiving a properly addressed and formatted request to the correct agency component, the agency "shall make the records *promptly* available to the person." 5 U.S.C. § 552(a)(3)(A) (the Promptly Available Requirement). More than three years after submitting his first Freedom of Information Act (FOIA) request, and more than 2 ½ years since filing this action, Plaintiff Gilberto Rodriguez Chaverra (Mr. Chaverra) is still waiting for Defendant U.S. Immigration and Customs Enforcement (ICE) to make available the records he seeks. ICE's response – "keep waiting until *at least* February 2018" – violates the Promptly Available Requirement. Here therefore respectfully moves for partial summary judgment.

## Facts

Plaintiff is the stepfather and Estate Administrator of 27 year-old Deferred Action for Childhood Arrivals (DACA) recipient Jeancarlo Alfonso Jimenez Joseph (Jean).[1]

---

[1] Pronounced "Gene."

Pltf's LCvR 7(h) Statement of Facts (SOF) ¶ 1. On June 1, 2017, Plaintiff submitted a FOIA request to ICE for "all records, including medical," pertaining to Jean. SOF ¶ 2. On October 3, 2017, he submitted a request to ICE for records relating to the Stewart Detention Center (SDC), where Jean died. SOF ¶ 3. On August 12, 2020, ICE informed the Court that following the parties' conferral about what Plaintiff alleged were inadequacies in the agency's search responsive to these requests, it had located 2800 pages of responsive agency records, as well as approximately 380 audio and video files. SOF ¶ 4. ICE "intends to complete its supplemental production of records by February 18, 2021." SOF ¶ 5.

## LEGAL STANDARD

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C.Cir.2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Liberty Lobby, Inc.,* 477 U.S. at 248.

FOIA cases typically and appropriately are decided on motions for summary judgment. *Defenders of Wildlife v. U.S. Border Patrol,* 623 F.Supp.2d 83, 87 (D.D.C.2009); *Bigwood v. United States Agency for Int'l Dev.,* 484 F.Supp.2d 68, 73 (D.D.C.2007); *Smith v. Dep't of Labor,* 798 F. Supp. 2d 274, 280 (D.D.C. 2011).

**ARGUMENT**

**A. The Plain Language of the Promptly Available Requirement Forecloses ICE's Years-Long Production Schedule.**

This Motion arises from ICE's undisputed and unlawful failure to do what Congress requires of all agencies in receipt of properly directed FOIA requests: Make non-exempt agency records "promptly available." 5 U.S.C. § 552(a)(3)(A). For the past 3 ½ years, ICE has failed to do so. Now the agency seeks ever more business-as-usual: Artificially low monthly production levels owing to purported budget and resource constraints that are entirely of the agency's own making. ICE and DHS know how to get money – even money Congress didn't even appropriate – for more detention beds, for detainee transfers, even for the border wall. But not for their FOIA offices. So requestors, like Plaintiffs, must wait for years to secure agency records Congress has explained time and again should be made "promptly available." The text of Section 552(a)(3)(A) is unambiguous. ICE must make the records Plaintiff seeks available to him promptly, which, if it means anything, means *not* almost four years, dozens of preventable detainee deaths, and an entire Presidential administration after he requested them.

**B. Congress's Purpose in Enacting and Amending the FOIA Demonstrate ICE's Proposed Production Timeline Is Unlawful.**

This phenomenon is not novel. Congress has acted time and again to ensure agencies fulfill the broken promise of FOIA's time limits and to incentivize them to respond more quickly. *See* 104 Cong. Rec. 47, 50 (daily ed. Sept. 17, 1996) (statement of Rep. Tate) ("Unfortunately—time after time—FOIA's promise to make Government information open and accessible has been broken. On many occasions—simple requests for information have languished—unanswered—for years. . . . This legislation also

addresses the problems many citizens face when requesting Federal records—unacceptable delays in getting an answer[.]") Because "**long delays in access can mean no access at all**," the 1996 FOIA Amendments endeavored to "increase public access to the electronic records of Federal agencies, and take long overdue steps to alleviate the delays in processing requests for Government records." 108 Cong. Rec. 76, 88 (daily ed. July 28, 1995) (statement of Sen. Leahy) (emphasis added).

Delays in processing and responding to FOIA requests, which Congress noted with concern could take over two years in some cases, were described as "**intolerable**" and "**not the level of customer service the American people deserve from their public servants**," forming the catalyst behind the amendments. *See* 108 Cong. Rec. 76, 88 (daily ed. July 28, 1995) (statement of Sen. Leahy) (emphasis added). *See also* 104 Cong. Rec. 47, 51 (daily ed. Sept. 17, 1996) (statement of Rep. Maloney); S. Rep. No. 104-272, at 10 (1996) ("The bill is also intended to promote agency compliance with statutory time limits. Chronic delays in receiving responses to FOIA requests are the largest single complaint of persons using the FOIA to obtain Federal agency records and information."). The 1996 amendments therefore extended the statutory time limit for an agency's initial determination from ten to twenty days, encouraged the implementation of a two-track processing system for simple and complex requests, and provided for expedited processing for certain requests. 108 Cong. Rec. 76, 88 (daily ed. July 28, 1995) (statement of Sen. Leahy).

Despite the 1996 amendments, delays in agency responses persisted. Congress again attempted to remedy agencies' recalcitrant untimeliness in 2007 by introducing legislation aimed at addressing the "growing backlog of FOIA requests" in order to "restore[] meaningful deadlines for agency action." S. Rep. No. 110-59, at 3 (2007). With

4

the 2007 amendments, Congress abrogated the Supreme Court's decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), which created perverse incentives for agencies to delay compliance. *See* S. Rep. No. 110-59, at 4 (2007). *Buckhannon* abolished the catalyst theory, which, as applied to the FOIA, allowed agencies to simply turn over records when sued, left requesters to bear the cost of agency timing violations, and allowed agencies to violate time limits without paying the price. *See* S. Rep. No. 110-59, at 4 (2007) ("When applied to FOIA cases, Buckhannon precludes FOIA requesters from ever being eligible to recover attorney's fees under circumstances where an agency provides the records requested in the litigation just prior to a court decision that would have been favorable to the FOIA requestor. The bill clarifies that Buckhannon does not apply to FOIA cases"). By clarifying the award of attorney's fees to successful requesters, Congress sought to encourage FOIA litigation in order to hold agencies accountable. *See* S. Rep. No. 110-59, at 4, footnote 3 (2007) ("Under *Buckhannon,* it is now *theoretically* possible for an obstinate government agency to substantially deter many legitimate and meritorious FOIA requests . . . As a result, many attorneys could stop taking on FOIA clients – and many FOIA requestors could stop making even legitimate and public-minded FOIA requests[.]") (emphasis in original). But was not enough.

Again, in 2015, Congress expressed concern over the growing backlog in FOIA requests and the stubborn persistence of agencies in violating the FOIA's time limits. *See* S. Rep. No. 114-4, at 2 (2015) ("As the number of requests grows, so does the backlog of agency responses. A response to a FOIA request is considered to be backlogged if it has been pending with a Federal agency longer than the statutorily prescribed deadline to respond. At the end of Fiscal Year 2013, more than 95,000

5

responses to FOIA requests were backlogged with a Federal agency—a 33% increase from Fiscal Year 2012.") (footnotes omitted). The 2015 amendment imposed further costs to the agency to coerce compliance: search fees could not be assessed if the agency does not comply with the time limits. *See* 5. U.S.C. § 552(a)(4)(A)(viii)(I).

Each time Congress has amended the FOIA, its focus has remained on the necessity of meeting the Act's time limits and making records promptly available to requestors. This continuing Congressional concern with agency timeliness explains the statute's plain language requiring records to be made "promptly available." Congress was aware of the pervasive noncompliance by agencies with the FOIA's time limits, yet it has not changed or extended those time periods since 1996. Indeed, rather than lower the bar for agencies, Congress has heightened the penalties for noncompliance. As such, Congress' time limits must be strictly followed and rigorously enforced, including the 'Promptly Available' Requirement.

ICE's anticipated theory of the FOIA's timing structure renders Plaintiff's admission ticket inside the courthouse door little more than a ticket to a different waiting line, where so long as the agency process and produces records monthly, the wait for those records to be made "promptly available" can be, in the agency's words, "impossible" to meaningfully estimate. Essentially, ICE will likely invite this Court to read Section 552(a)(3)(A) as meaningless surplusage. That invitation should be rejected.

## CONCLUSION

Mr. Chaverra is entitled to partial summary judgment because there is no genuine issue of material fact as to ICE's failure to provide all responsive agency records to date, and because the FOIA's Promptly Available Requirement entitles him to judgment as a matter of law.

Dated: August 21, 2020

Respectfully submitted,

/s/ R. Andrew Free
**R. ANDREW FREE, DDC Bar No.59830**
P.O. Box 90568
Nashville, TN 37209
Tel. 844-321-3221
Fax: 615-829-8959
Andrew@immigrantcivilrights.com
*Counsel for the Plaintiff*