UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERTO RODRIGUEZ CHAVERRA,<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>*Defendants*. | Civil Action No. 18-0289 (JEB) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, U.S. Immigration and Customs Enforcement ("ICE"), argues that Plaintiff's Motion for Partial Summary Judgment should not be granted, and that ICE should not be ordered to produce by October 30, 2020, all of the responsive records that it located as the result of its second supplemental search that was completed as ordered by the Court, by August 7, 2020. Following its second supplemental search, ICE located approximately 3500 pages of responsive records and approximately 380 audio and video files. Throughout this litigation, ICE has been exercising due diligence in processing the responsive records associated with Plaintiff's FOIA request and continues to do so.

**FACTUAL BACKGROUND**

On June 1, 2017, Plaintiff submitted a Freedom of Information Act ("FOIA") request to ICE requesting the following records:

All non-A-file agency records relating to Jeancarlo Alfonso Jimenez-Joseph, ("Jimenez") A204-603-723, including, but not limited to:

    (A) ICE's identification, interview, placement of a detainer on, arrest, and transfer of Jimenez in the Wake County, North Carolina Jail beginning on or around February 5, 2017 and continuing until on or around March 3, 2017;

    (B) All agency records relating to ICE's transfer of Jimenez to the York County, South Carolina Detention Facility, detention of Jimenez at the facility, and subsequent transfer to the Stewart Detention Center ("SDC") in Lumpkin, Georgia between March 3, 2017 and March 7, 2017;

    (C) All Immigrant Health Services Corps records pertaining to Jimenez;

    (D) All records relating to Jimenez's detention in SDC from on or around March 7, 2017 until his death on or around May 15, 2017;

    (E) All records created or obtained about Jimenez or his death after it occurred;

    (F) all inter-agency and external communications with any party regarding Jimenez;

    (G) All records about Jimenez created on or before March 3, 2017;

    (H) All notifications to ICE from CoreCivic (formerly known as the Corrections Corporation of America) regarding Jimenez's medical or psychiatric treatment, disciplinary and classification history, and complaints and grievances, visitations, and phone logs; and

    (I) Any other records pertaining in any way to Jimenez's identification, apprehension, detention, and death in ICE custody.

On September 11, 2017, ICE provided a response to Plaintiff indicating that the information requested was being withheld in its entirety pursuant to 5 U.S.C. § 552(b)(7)(A) due to an ongoing criminal law enforcement investigation. *See* Dkt. No. 1-9. On September 25, 2017, Plaintiff filed an administrative appeal. *See* Dkt. No. 1-10. On October 23, 2017, ICE provided Plaintiff with a final determination and upheld the application of FOIA Exemption 7(A). *See* Dkt. No. 1-12.

On October 3, 2017, Plaintiff submitted a separate FOIA request to ICE requesting the following records:

(1) Contracts and Agreements
All contracts and agreements governing detention and medical operations at the Stewart Detention Center in Lumpkin, Georgia between January 1, 2017 and the date of the agency's response to this request. This request includes, but is not limited to, Inter-governmental services agreements with Stewart County, Georgia and any other state or local government entity providing ICE any services of any type at Stewart. It also includes any modifications, addenda, riders, or performance work statement incorporated to these agreements. These records are likely to be found in ICE's Office of Acquisition Management and/or ICE's Office of Detention Oversight. They are likely to include, but not be limited to, agreements with contractors Maxim Health Services, CoreCivic/CCA, TransCor, Stewart County, GA, the Nakamoto Group, and Creative Corrections.

(2) Inspections
All records of inspections at the Stewart Detention Facility between January 1, 2015 and the date of the agency's response to this request. These inspections may have been conducted by ICE Office of Detention Oversight, the American Correctional Association, or a private contractor such as the Nakamoto Group.

(3) Significant Incident Reports/Significant Event Notifications
All SIRs and SENs regarding any detainee or incident at the Stewart Detention Center from January 1, 2017 through the date of the agency's response to this request. These records are expected to be maintained digitally in ICE's information systems infrastructure, either at HQ, or within the Atlanta Field Office

(4) IHSC Policy and Practice Materials
All written policies, practices, and standards governing the performance of IHSC's medical duties at the Stewart Detention Center.

On October 11, 2017, ICE acknowledged receipt of Plaintiff's FOIA request; ICE informed Plaintiff that due to the increasing number of FOIA requests received by ICE, there may be delay in processing the request. *See* Dkt. No. 1-15.

On February 8, 2018, Plaintiff filed a complaint asserting that ICE, as of the date of the complaint, had not released responsive records. In August 2018, ICE began monthly productions of responsive records. *See* Dkt. No. 18. In July 2019, ICE, having made fourteen productions of records to plaintiff, completed its final release of records. Supp. Decl. Pineiro ¶ 9, Ex. 3.

3

On October 17, 2019, the parties informed the Court that, after conferring with Plaintiff, ICE identified additional potentially responsive records. *See* Dkt. No. 35. ICE began producing supplemental records in October 2019, and having made four supplemental productions of records to plaintiff, completed its supplemental production in February 2020. Supp. Decl. Pineiro ¶ 10, Ex. 4.

On June 29, 2020, the parties informed the Court that, following additional discussions to address Plaintiff's concerns with ICE responses to the FOIA requests, ICE was conducting another round of searches. *See* Dkt. No. 42. On July 8, 2020, the Court ordered ICE to complete its supplemental searches by August 7, 2020. As a result of its supplemental search, ICE located approximately 3500 pages of potentially responsive records and approximately 380 audio and video files. *See* Dkt. No. 47. On September 15, 2020, with respect to this second supplemental search of records, ICE released its first production of documents and expects to complete processing by February 2021. Supp. Decl. Pineiro ¶ 11, Ex. 5.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must

set forth specific facts showing that there is a genuine issue for trial." *Id.*

## DISCUSSION

Plaintiff argues that it is entitled to a partial summary judgement with respect to the fact that ICE has failed to make non-exempt agency records "promptly available" pursuant to 5 U.S.C. § 552(a)(3)(A) within the past three years and half. Dkt. No. 45-1. As support for its motion, Plaintiff provides legislative history of the FOIA and its various amendments.

ICE, however, disagrees with Plaintiff's assertion that it has failed to make non-exempt records "promptly available" to Plaintiff. Upon completion of its initial search for responsive records, starting August 2018 through July 2019, ICE began processing and producing thousands of pages to Plaintiff; releases were made to Plaintiff on a regular basis. ICE indicates that the following releases were made on these dates (Supp. Decl. Pineiro ¶ 9, Ex. 3):

- On August 6, 2018, ICE produced 175 pages to plaintiff;
- On August 9, 2018, ICE produced 717 pages to plaintiff;
- On September 18, 2018, ICE produced 524 pages to plaintiff;
- On October 29, 2018, ICE produced 654 pages to plaintiff;
- On December 3, 2018, ICE produced 500 pages to plaintiff;
- On February 6, 2019, ICE produced 487 pages to plaintiff;
- On February 6, 2019, ICE produced 543 pages to plaintiff;
- On March 8, 2019, ICE produced 649 pages to plaintiff;
- On April 4, 2019, ICE produced 563 pages to plaintiff;
- On April 4, 2019, ICE produced 660 pages to plaintiff;
- On May 15, 2019, ICE produced 731 pages to plaintiff;
- On May 31, 2019, ICE produced 525 pages to plaintiff;
- On July 8, 2019, ICE produced 497 pages to plaintiff; and
- On July 19, 2019, ICE produced 473 pages to plaintiff.

Having reviewed ICE's production, Plaintiff raised concerns with respect to ICE's productions. Dkt. No. 34. Accordingly, ICE conducted a supplemental search and identified additional potentially responsive records. Dkt. No. 35. ICE indicates that the following releases were made on these dates (Supp. Decl. Pineiro ¶ 10, Ex. 4):

- On October 25, 2019, ICE produced 504 pages to plaintiff;
- On December 10, 2019, ICE produced 415 pages to plaintiff;
- On January 22, 2020, ICE produced 426 pages to plaintiff; and
- On March 4, 2020, ICE produced 255 pages to plaintiff.

Having reviewed ICE's supplemental production, Plaintiff raised again concerns with respect to ICE's productions. Dkt. No. 42. Accordingly ICE conducted a second supplemental search. The Court ordered ICE to complete its second supplemental search by August 7, 2020. As a result of this second supplemental search, ICE located approximately 3500 pages of potentially responsive records and approximately 380 audio and video files. Dkt. No. 47. With respect to this second supplemental search, on September 15, 2020, ICE produced 461 pages of documents to Plaintiff. Based on ICE's initial search and its two additional supplemental searches, ICE has conducted a search reasonably calculated to uncover potentially responsive records.

Although the processing of Plaintiff's FOIA requests, as a whole, has been a lengthy process, when it comes to the review and release of documents to Plaintiff, ICE has diligently conducted its production of records to Plaintiff, and has made non-exempt records available to Plaintiff on a rolling basis as soon as practicable. Furthermore the processing rate that ICE is averaging, approximately 500 pages per month, is reasonable and appropriate. *See e.g. Nat'l Sec. Counselors v. U.S. Dep't of Justice,* 848 F.3d 467, 471-72 (D.C. Cir. 2017) (recognizing agency's 500 page per month policy "serves to promote efficient responses to a larger number of requesters"); *Middle East Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 187 (D.D.C. 2018) ("500 pages per month is an appropriate rate of production."); *Negley v. U.S. Dep't of Justice,* 305 F. Supp. 3d 36, 47 (D.D.C. 2018) ("agency's assessment that its 'standard rate of 500 pages per month' [is] appropriate").

## CONCLUSION

For the reasons stated above, ICE respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment, and that ICE may be permitted to complete its production of records with respect to its second supplemental search no later than February 2021.

Dated: October 5, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

Daniel F. Van Horn
Chief, Civil Division
D.C. Bar #924092

By:  /s/ *Kathleene Molen*
KATHLEENE MOLEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: (202) 803-1572
Kathleene.Molen@usdoj.gov

*Counsel for Defendants*