UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERTO RODRIGUEZ CHAVERRA,<br><br>Plaintiff,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | Civil Action No. 18-0289 (JEB) |

**DEFENDANTS' OPPOSED MOTION TO USE A REPRESENTATIVE SAMPLE
*VAUGHN* INDEX AND MEMORANDUM IN SUPPORT THEREOF**

Defendants, U.S. Immigration and Customs Enforcement ("ICE"), and ICE's Assistant Director for the Department of Homeland Security ("DHS"), ICE Health Services Corps., respectfully move for an Order permitting ICE to select and submit, and directing the parties to use, a representative sample index ("Sample Index"), pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) for the parties' anticipated cross motions for summary judgment.[1] Pursuant to Local Civil Rule 7(m), the parties conferred and Plaintiff opposes this request.

**PRELIMINARY STATEMENT**

In this Freedom of Information Act ("FOIA") case, Plaintiff submitted FOIA requests to ICE comprising 13-subparts in total, which resulted in ICE producing approximately 12,079 pages of responsive records over the course of 24 interim releases.[2] Nearly 7,000 of these pages contain

---

[1] For purposes of this motion, "the parties" refers to Defendants, ICE and ICE's Assistant Director for DHS, ICE Health Services Corps., and Plaintiff; it does not include the other Defendants named in this case—DHS Office of Inspector General and DHS Office for Civil Rights and Civil Liberties. *See* Compl. ECF No. 1.

[2] ICE's earlier representations indicated that ICE released over 13,500 documents to Plaintiff, which was an incorrect overestimate. *See* Joint Status Report, ECF No. 75.

withholdings. The parties then conferred extensively to narrow the scope of disputes regarding ICE's production in order to narrow the number of withholdings ICE would have to review and the parties would have to litigate. After many rounds of negotiations involving three different defense counsel and two different Plaintiff's counsel, Plaintiff abandoned the negotiation process and maintains that Plaintiff will challenge every withholding contained in ICE's 12,079-page production. *See* Joint Status Report, ECF No. 75. Thus, to prepare a *Vaughn* Index of this production, ICE would have to rereview the nearly 7,000 pages it produced containing withholdings and include each redaction contained therein in that index. Given this large volume of pages at issue in this case, a review of each page would be excessive and consume a significant amount of ICE's resources, along with the parties and Court's resources and time on summary judgment. Accordingly, ICE conferred with Plaintiff, through counsel, on the possibility of using a representative sample *Vaughn* Index to narrow the scope of documents in which Defendants must defend, and Plaintiff can challenge, the propriety of withholdings in the parties' anticipated cross summary judgment motions.

Initially, the parties agreed with the approach of using a joint proposed representative sample *Vaughn* Index for the parties' anticipated cross summary judgment motions and further agreed to allow Plaintiff to choose the representative sampling to include in that Index. When Plaintiff submitted Plaintiff's proposed page selections, however, ICE noticed that the page selections were not a representative sampling of ICE's 12,079-page production. For example, of the 24 interim releases ICE produced to Plaintiff, Plaintiff's proposed sample included pages from only four of these interim releases. *See* Joint Status Report, ECF No. 77 at 6 n.2. Likewise, Plaintiff sought a consecutive batch of approximately 200 pages of criminal rap sheets that contained whole

pages without redactions and others with redactions applied only for FOIA Exemptions 6 and 7(C). *See id.*

When Defendants raised this issue with Plaintiff, the parties attempted to confer on ways to make Plaintiff's proposed sample more representative of ICE's production. *See id.* In this process, however, Plaintiff clarified that no matter what type of sample *Vaughn* Index Defendants would ultimately seek to use, Plaintiff would still object to be bound by that Index for purposes of challenging any withholdings in Plaintiff's cross-summary judgment motion. *See id.* As this arrangement would defeat the objective of a sample *Vaughn* Index to narrow the volume of records in which Defendants must defend and Plaintiff can challenge on summary judgment, Defendants submit this motion for an Order permitting ICE to select and submit a Sample Index and directing to parties to use the same Sample Index in their anticipated cross motions for summary judgment.

## BACKGROUND

By email dated June 1, 2017, Plaintiff Gilberto Rodriguez Chaverra, the Administrator of the Estate of Jeancarlo Alfonso Jimenez Joseph ("Mr. Jimenez") sent a FOIA request to ICE seeking all records pertaining to Mr. Jimenez, "including, but not limited to" nine subparts. *See* Compl. ¶¶ 22, 35; Declaration of Fernando Pineiro ("Pineiro Decl.") ¶ 5. On October 3, 2017, Plaintiff, through counsel, submitted a second FOIA request to ICE seeking four additional categories of agency records. *See* Compl. ¶ 48; Pineiro Decl. ¶ 6. After numerous correspondence between Plaintiff and ICE, including an administrative appeal, Plaintiff initiated this suit on February 8, 2018 to compel the production of records responsive to Plaintiff's FOIA requests to ICE, as well as requests to DHS' Office of Inspector General and Civil Rights Civil Liberties Office. *See* Pineiro Decl. ¶ 7; *see generally* Compl.

On July 2018, ICE began producing responsive records to Plaintiff, which initially continued through July 2019. *See* Pineiro Decl. ¶ 8. After additional correspondence with Plaintiff, ICE conducted supplemental searches and began producing supplemental records in October 2019. *See id.* ¶ 9. This supplemental production continued until February 2020. *See id.* After Plaintiff reviewed the supplemental records, Plaintiff corresponded with ICE about additional records. *See id.* ¶ 10. ICE then located another approximately 3,533 pages of records and approximately 380 audio and video files. *See id.* After conferring about the audio and video files, Plaintiff confirmed that he did not wish for ICE to process these files. *See id.* ¶ 10 n.2; Joint Status Report, ECF No. 56. ICE then re-started productions of a second round of supplemental records in September 2020, which was completed in February 2021. *See id.* ¶ 10. Since then, ICE estimates that it produced to Plaintiff approximately 12,079 pages in response to Plaintiff's FOIA request, of which 6,991 contain withholdings in full or in part, plus one spreadsheet.

ICE applied FOIA Exemptions 4, 5, 6, 7(C), and 7(E) to material that it withheld from production. *See id.* ¶ 14. Based on ICE's assessment to date, ICE estimates that the majority of exemptions ICE applied to its productions include Exemptions 6 and 7(C), as evidenced by the fact that ICE referenced these redactions in every one of its 24 cover letters accompanying ICE's interim releases. *See id.* ¶ 15. The next categories of exemptions that ICE estimates it applied most frequently to its productions in this case include Exemptions 5 and 7(E). *See id.* ¶ 19. Finally, ICE estimates that it applied Exemption 4 the least frequently and in only one of its 24 interim releases. *See id.* ¶ 23.

ICE, through counsel, has repeatedly engaged with Plaintiff, through counsel, in an attempt to narrow the scope of disputes regarding ICE's withholdings, including requesting Plaintiff identify specific pages of Exemption 6 and 7(C) withholdings, among others, that Plaintiff believes

were misapplied or applied in error. Plaintiff declined, however, to identify any of these withholdings for ICE's review until Plaintiff provided a proposed sample *Vaughn* Index which appeared to specifically select pages for which Plaintiff was most concerned, rather than a representative sampling for addressing ICE's satisfaction of its FOIA obligations in this case on summary judgment. *See* April 18, 2023 Email Between the Parties' Counsel, Ex. 6. After negotiations over a sample *Vaughn* Index fell through, *see* ECF No. 77 at 6, it is Defendants' understanding that all of ICE's withholdings remain at issue in this case.

## PROPOSED SAMPLING PROCEDURE TO CREATE SAMPLE INDEX

Due to the volume of records that otherwise would need to be addressed in a *Vaughn* Index, Defendants request leave to select and submit a Sample Index according to the following terms. First, ICE would address in the Sample Index all withholdings contained in the Excel Spreadsheet. Next, ICE would address in the Sample Index every 15th page of ICE records produced that contained withholdings. ICE will then review these pages to ensure that there is at least one withholding for each of the five FOIA exemptions applied to ICE's productions to Plaintiff, with the understanding that such withholdings are likely to appear in frequency proportional to the frequency by which they were applied to the whole production. If any exemption is missing from the Sample Index, ICE will add an additional page to the Sample Index containing that missing exemption. ICE will therefore aim to include approximately 470 pages in its Sample Index, which sums to approximately 7 percent of all pages of records produced that contain withholdings in this matter. *See* Pineiro Decl. ¶ 25.

## ARGUMENT

The D.C. Circuit has held that "[r]epresentative sampling is an appropriate procedure to test any agency's FOIA exemption claims when a large number of documents are involved"

*Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991). Such sampling "allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an *in camera* inspection." *Id.* Thus, courts have found that the use of a sampling procedure to create a representative sample *Vaughn* Index is appropriately employed, where "the number of documents is excessive and it would not realistically be possible to review each and every one." *Weisberg v. Dep't of Just.*, 745 F. 2d 1476, 1491 (D.C. Cir. 1984) (citing *Vaughn v. Rosen*, 383 F. Supp. 1049, 1052 (D.D.C. 1974), *aff'd* 523 F.2d 1136 (1975)); *see Bonner*, 928 F.2d at 1151 (affirming that representative sampling is a well-recognized procedure "to test an agency's FOIA exemption claims when a large number of documents are involved."). "If the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.'" *Bonner*, 928 F.2d at 1151 (quoting *Fensterwald v. CIA*, 443 F. Supp. 667, 669 (D.D.C. 1977)); *see also Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986) ("Upon examining the sample, a court is then able to extrapolate its conclusions from the representative sample to the larger group of withheld materials.") (internal quotations and citations omitted).

Here, the Court can be assured that the Sample Index ICE proposes will suffice to test ICE's FOIA exemptions such that the Court can apply its findings on those exemptions to the larger group of withheld materials. First, the sample size of seven percent of all pages of records produced that contained withholdings in this matter is more than consistent with D.C. Circuit precedent. *See Weisberg*, 745 F.2d 1476, 1490 (D.C. Cir. 1984) (approving use of random sample constituting two percent of withheld material for *Vaughn* index); *see also Meeropol*, 790 F.2d at 959 (affirming a one percent sample of over 300 documents in conjunction with relatively detailed affidavits); *All. Defending Freedom v. IRS*, Civ. A. No. 15-0525 (D.D.C. Dec. 22, 2016),

ECF No. 23 (allowing for a two percent random sample of over 10,000 documents withheld in full but noting "the Court retains the authority to order the filing of an improved Vaughn Index" if needed); *Shurtleff v. EPA*, Civ. A. No. 10-2030 (EGS) (D.D.C. May 25, 2011), ECF No. 18 (allowing for a five percent random sample of over 9,393 records). Specifically, ICE proposes to address 470 pages in its Sample Index by including every 15th page of the 6,991 pages produced to Plaintiff in this matter that contained withholdings, which sums to approximately 7 percent of all records produced in this matter. *See* Pineiro Decl. ¶ 25.

Second, ICE proposes a sampling method that would ensure the material gathered for ICE's Sample Index are representative of ICE's production at large. As the D.C. Circuit explained, "random sampling, like the 1% sampling strategy used in *Weisberg*, although appropriate in many cases, may overlook distinctive documents or accidentally shield patently unexceptional documents from FOIA" *In re Dep't of Def.*, 848 F.2d 232, 237 (D.C. Cir. 1988). Thus, in *Bonner,* the D.C. Circuit stressed that courts must strive "to preserve the representative character of the sample." *Bonner*, 928 F.2d at 1152. Ultimately, it is within the trial judge's discretion to choose the sampling method, as each specific case may require. *See Dep't of Def.*, 848 F.2d at 237. Here, ICE proposes to include every 15th page of records produced in this case that contained withholdings in the Sample Index, with the added steps of ensuring that every selected page includes withholdings and that the entire Sample Index includes any additional pages of records necessary to ensure that each exemption applied to ICE's whole production is included in the Sample Index. *See* Pineiro Decl. ¶ 25.

In addition, it bears noting that ICE's preliminary assessment of records demonstrates that the types of material for which it has applied its withholdings are largely the same for each category of exemption. *See id.* ¶¶ 15-24. For example, ICE routinely applied Exemptions 6 and 7(C) in

7

tandem to protect individuals' personal privacy interests, including the names, signatures, phone numbers, e-mail addresses, mailing addresses, dates of birth, and other personally identifiable information of third-party individuals and ICE employees. *See id.* ¶ 18. Similarly, ICE applied Exemption 5 to material normally privileged in the civil discovery context, including attorney-client communications, work-product, and deliberative process materials. *See id.* ¶ 20. Likewise ICE applied Exemption 7(E) in limited context to protect the disclosure of law enforcement sensitive techniques, including Uniform Resource Locators, and internal-use law enforcement codes. *See id.* ¶ 22. Finally, ICE applied Exemption 4 to materials gathered only from three different submitters who contract with ICE. *See id.* ¶ 23. Thus, the Court can be assured that with ICE's proposed Sample Index, it will be able to conduct a meaningful review of each type of repeat withholding applied in similar records across ICE's production, from which the Court can extrapolate from the representative sample to the larger group of withheld materials. *Bonner*, 928 F.2d at 1151.

Finally, because many withholdings contained in ICE's Sample Index are contained in records released in part and withheld in part, ICE will have to justify that it disclosed all non-exempt segregable portions of those records. *See* Pineiro Decl. ¶ 29. Accordingly, a sampling for these records will be sufficient to test ICE's compliance with FOIA's segregabiltity requirements.

\*   \*   \*

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' request to select and submit a representative sample *Vaughn* index and an order directing the parties to use the same on summary judgment. A proposed Order consistent with this request is attached as follows.

Dated: June 2, 2023

Respectfully submitted,

MATTHEW M. GRAVES,
D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By: */s/ Anna D. Walker*
ANNA D. WALKER
Assistant United States Attorney
United States Attorney's Office, Civil Division
601 D Street, NW
Washington, DC 20530
Phone: (202) 252-2544

*Counsel for the United States of America*