UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERTO RODRIGUEZ CHAVERRA,<br><br>  Plaintiff,<br><br>       v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.,*<br><br>  Defendants. | Civil Action No. 18-0289 (JEB) |

**DECLARATION OF FERNANDO PINEIRO
IN SUPPORT OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

**I.        INTRODUCTION**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

      1.        I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 ("the FOIA"), the Privacy Act, 5 U.S.C. § 552a ("the Privacy Act"), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

      2.        As the FOIA Director of the ICE FOIA Office, my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA

Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. In connection with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with ICE's processing of the FOIA requests submitted to ICE that are the subject of this litigation.[1]

3.   I make this declaration in my official capacity in support of Defendants in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

## II.   PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUESTS AND THE INSTANT LITIGATION

4.   In an email dated June 1, 2017, attached as Ex. 1, counsel for Gilberto Rodriguez Chaverra, as the Administrator of the Estate of Jeancarlo Jimenez-Joseph ("Plaintiff") submitted the following request to ICE:

> All non-A-file agency records relating to Jeancarlo Alfonso Jimenez-Joseph, ("Jimenez") A204-603-723, including, but not limited to:
>
> (A) ICE's identification, interview, placement of a detainer on, arrest, and transfer of Jimenez in the Wake County, North Carolina Jail beginning on or around February 5, 2017 and continuing until on or around March 3, 2017;
>
> (B) All agency records relating to ICE's transfer of Jimenez to the York County, South Carolina Detention Facility, detention of Jimenez at the facility, and subsequent transfer to the Stewart Detention Center ("SDC") in Lumpkin, Georgia between March 3, 2017 and March 7, 2017;

---

[1] As discussed herein, FOIA Request #1, 2017-ICFO-32679, was submitted on June 1, 2017. FOIA Request #2 was submitted on October 3, 2017 and included three tracking numbers, 2018-ICFO-00998, 2018-ICFO-00999, and 2018-ICLI-00023.

    (C) All Immigrant Health Services Corps records pertaining to Jimenez;

    (D) All records relating to Jimenez's detention in SDC from on or around March 7, 2017 until his death on or around May 15, 2017;

    (E) All records created or obtained about Jimenez or his death after it occurred;

    (F) all inter-agency and external communications with any party regarding Jimenez;

    (G) All records about Jimenez created on or before March 3, 2017;

    (H) All notifications to ICE from CoreCivic (formerly known as the Corrections Corporation of America) regarding Jimenez's medical or psychiatric treatment, disciplinary and classification history, and complaints and grievances, visitations, and phone logs; and

    (I) Any other records pertaining in any way to Jimenez's identification, apprehension, detention, and death in ICE custody.

5. On October 3, 2017, in a separate FOIA request attached as Ex. 2, Plaintiff submitted the following to ICE:

> Pursuant to the Freedom of Information Act, I hereby request the following agency records on behalf of my clients:
>
> (1) Contracts and Agreements
> All contracts and agreements governing detention and medical operations at the Stewart Detention Center in Lumpkin, Georgia between January 1, 2017 and the date of the agency's response to this request. This request includes, but is not limited to, Inter-governmental services agreements with Stewart County, Georgia and any other state or local government entity providing ICE any services of any type at Stewart. It also includes any modifications, addenda, riders, or performance work statement incorporated to these agreements. These records are likely to be found in ICE's Office of Acquisition Management and/or ICE's Office of Detention Oversight. They are likely to include, but not be limited to, agreements with contractors Maxim Health Services, CoreCivic/CCA, TransCor, Stewart County, GA, the Nakamoto Group, and Creative Corrections.
>
> (2) Inspections
> All records of inspections at the Stewart Detention Facility between January 1, 2015 and the date of the agency's response to this request. These inspections may have been conducted by ICE Office of Detention

>     Oversight, the American Correctional Association, or a private contractor such as the Nakamoto Group.
>
> (3) Significant Incident Reports/Significant Event Notifications
>     All SIRs and SENs regarding any detainee or incident at the Stewart Detention Center from January 1, 2017 through the date of the agency's response to this request. These records are expected to be maintained digitally in ICE's information systems infrastructure, either at HQ, or within the Atlanta Field Office
>
> (4) IHSC Policy and Practice Materials
>     All written policies, practices, and standards governing the performance of IHSC's medical duties at the Stewart Detention Center.

6. After numerous correspondence between Plaintiff and ICE, including an administrative appeal, on February 8, 2018, Plaintiff filed a Complaint under the above caption in the United States District Court for the District of Columbia. Plaintiff's Complaint included causes of action under the Freedom of Information Act, Administrative Procedure Act and a Petition for Writ of Mandamus. The Government filed a Partial Motion to Dismiss, with regards to the Administrative Procedure Act and a Petition for Writ of Mandamus causes of action, which was granted by the Court on October 2, 2018. *See* Order, ECF No. 16.

7. In July 2018, ICE FOIA began producing responsive records to the Plaintiff in interim releases. The productions continued through July 2019 and comprised 14 interim releases. *See* Ex. 3.

8. After additional correspondence with Plaintiff, ICE conducted supplemental searches and began producing supplemental records in October 2019. The supplemental productions continued through February 2020 and comprised four (4) interim releases. *See* Ex. 4.

9. After Plaintiff reviewed the supplemental records, Plaintiff re-approached ICE about additional records. As a result, ICE conducted yet another round of supplemental searches and located additional responsive records. Specifically, ICE located 3,533 pages of records and

approximately 380 audio and video files.[2] ICE re-started the productions of supplemental records in September 2020. The productions continued through February 2021 and comprised six (6) interim releases. *See* Ex. 5

10. On August 21, 2020, Plaintiff filed a Motion for Partial Summary Judgment, moving for an Order from the Court requiring prompter release of ICE's supplemental production. On November 5, 2020, the Court denied Plaintiff's Motion for Partial Summary Judgment. *See* ECF No. 52.

11. In sum, between July 2018 and February 2021, ICE conducted multiple rounds of searches and produced 12,079 pages of records and one Microsoft Excel spreadsheet to the Plaintiff. Of the 12,079 pages of records, 5,088 pages were released in full, 6,462 pages were released with partial withholdings, and 529 pages were withheld in full.

### III. DESCRIPTION OF RECORDS RELEASED TO THE PLAINTIFF BY ICE

12. Thirty-two (32) ICE employees conducted searches for responsive records in response to Plaintiff's two (2) FOIA requests. The 32 ICE employees located and provided 12,079 pages of records, and one Microsoft Excel spreadsheet, responsive to Plaintiff's FOIA requests which were provided to Plaintiff in productions made between July 2018 and February 2021.

13. ICE applied several FOIA Exemptions to the material that it produced to Plaintiff, including Exemptions 4, 5, 6, 7(C), and 7(E).

---

[2] After determining that Plaintiff already had all of the audio and video files that were in ICE's possession, Plaintiff confirmed that he no longer wished for ICE to process the 380 audio and video files that ICE gathered in response to Plaintiff's FOIA request. *See* Joint Status Report, ECF No. 56.

14. The majority of exemptions that ICE applied in its productions include Exemptions 6 and 7(C), as evidenced by the fact that ICE referenced these redactions in every one of its 24 cover letters accompanying ICE's interim releases. *See infra* Table 1.

15. FOIA Exemption 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6. When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

16. FOIA Exemption 7(C) similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

17. When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in shedding light on ICE's performance of its statutory duties. To that end, it is ICE's general practice, to apply Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, signatures, phone numbers, e-mail addresses, mailing addresses, dates of birth, and other personally identifiable information ("PII") of third-party individuals and ICE employees, which are contained in material responsive to FOIA requests. In this case, ICE applied this same practice to the same materials gathered in response to Plaintiff's FOIA request.

18. The next two categories of exemptions that ICE most frequently applied in its productions in this case include, Exemption 5 and 7(E), as evidenced by the fact that ICE referenced these redactions in approximately half of its 24 cover letters accompanying its interim releases. *See infra* Table 1.

19. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. According to the cover letters accompanying its interim releases, ICE has withheld material under FOIA Exemption (b)(5) that is protected by the deliberative process privilege, the attorney-client privilege, and privilege over attorney work-product.

20. FOIA Exemption (b)(7)(E) protects from disclosure records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions that are not well known to the public, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

21. Here, ICE generally applied FOIA Exemption (b)(7)(E) in a limited number of instances to protect from disclosure law enforcement sensitive techniques, Uniform Resource Locators ("URLs"), and internal-use law enforcement codes used within various law enforcement sensitive databases and case management systems.

22. Lastly, ICE applied Exemption 4 in only one production.[3] *See infra* Table 1. In July, 2018, after sending out Submitter Notices, pursuant to 6 CFR § 5.7, ICE applied Exemption 4 to the following contractual records: 217 pages of Contracts that contained information

---

[3] ICE made a production in November 2020, where Exemption 4 was asserted on one additional record, bates pages 2018-ICLI-00023 010378. Upon litigation review, ICE is no longer asserting Exemption 4 on this page and re-released this record on June 1, 2023.

belonging to Corrections Corporation of America; 252 pages of Contracts that contained information belonging to Ingenesis Inc.; and 245 pages of Contracts that contained information belonging to Maxim Healthcare Services, Inc.

23. Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." This exemption is intended to protect the interests of both the government and submitters of information. The exemption covers two distinct categories of information in federal agency records: (1) trade secrets; and (2) information that is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential.

IV. **ORGANIZATION OF ICE'S PROPOSED SAMPLE *VAUGHN* INDEX**

24. As visually demonstrated in Table 1 below, to compile a representative sampling for a sample *Vaughn* index, ICE proposes including the entirety of the Excel spreadsheet and every 15th page of ICE records produced that contained withholdings. ICE will then review these pages to ensure that there is a least one withholding for each of the five FOIA exemptions, with the understanding that such withholdings are likely to appear in frequency proportional to the frequency by which they were applied to the whole production. If any exemption is missing from the sample *Vaughn* index, ICE will add an additional page to the sample *Vaughn* index containing that missing exemption, without removing any other pages. ICE will aim to include approximately 470 pages in its representative sample *Vaughn* index, which sums to approximately 7 percent of all records produced in this matter that contained withholdings.

*Table 1:*

| Production Date | Production Page Count | Pages Released in Full | Pages With Partial Withholdings | Pages Withheld in Full | Estimated *Vaughn* Sample Page Count | Exemptions Asserted |
|---|---|---|---|---|---|---|
| 8/6/2018 | 175 | 171 | 4 | 0 | 1 | 6, 7C |
| 8/9/2018 | 717 | 472 | 222 | 23 | 16 | 4, 6, 7C, 7E |
| 9/18/2018 | 524 | 36 | 488 | 0 | 33 | 5, 6, 7C, 7E |
| 10/29/2018 | 654 | 414 | 240 | 0 | 16 | 5, 6, 7C, 7E |
| 12/3/2018 | 500 | 225 | 275 | 0 | 18 | 5, 6, 7C, 7E |
| 2/6/2019 | 487 | 311 | 176 | 0 | 12 | 5, 6, 7C, 7E |
| 2/6/2019 | 543 | 534 | 9 | 0 | 1 | 5, 6, 7C, 7E |
| 3/8/2019 | 649 | 480 | 160 | 9 | 11 | 5, 6, 7C, 7E |
| 4/4/2019 | 563 | 450 | 113 | 0 | 8 | 6, 7C, 7E |
| 4/4/2019 | 660 | 316 | 344 | 0 | 23 | 6, 7C, 7E |
| 3/4/2020 | 255 | 108 | 147 | 0 | 10 | 6, 7C |
| 5/15/2019 | 731 | 93 | 638 | 0 | 43 | 5, 6, 7C, 7E |
| 5/31/2019 | 525 | 306 | 219 | 0 | 15 | 5, 6, 7C, 7E |
| 7/8/2019 | 497 | 74 | 421 | 2 | 28 | 5, 6, 7C, 7E |
| 7/19/2019 | 473 | 102 | 371 | 0 | 25 | 6, 7C, 7E |
| 10/25/2019 | 504 | 25 | 229 | 250 | 32 | 6, 7C |
| 12/10/2019 | 415 | 16 | 231 | 168 | 27 | 6, 7C |
| 1/22/2020 | 426 | 111 | 253 | 62 | 21 | 6, 7C |
| 9/15/2020 | 461 | 211 | 250 | 0 | 17 | 5, 6, 7C |
| 10/30/2020 | 454 | 63 | 391 | 0 | 26 | 5, 6, 7C |
| 11/13/2020 | 489 | 269 | 220 | 0 | 15 | 5, 6, 7C |
| 12/16/2020 | 510 | 89 | 421 | 0 | 28 | 5, 6, 7C |
| 1/11/2021 | 461 | 119 | 342 | 0 | 23 | 5, 6, 7C, 7E |
| 2/17/2021 | 406 | 93 | 298 | 15 | 21 | 6, 7C, 7E |
|  | 12079 | 5088 | 6462 | 529 | 470 |  |

25.   The proposed representative sample *Vaughn* index would be in a table format. The first row would contain the titles of four (4) columns that provide a brief description of the information contained within the corresponding columns below.  The heading titles, from the left to the right side of the page, would be: Page Number, Withholding: Full/Partial, Description of Records and Redactions, and Reasons for Redactions, and Exemption(s) Applied.

26. The first heading, Page Number, would refer to the page number on each of the responsive documents. The second heading, Full/Partial Withholding, would refer to the level of withholdings taken on the documents. The information below the third heading, Description of Records and Redactions, and Reasons for Redactions, would describe the redacted information and the justification for redaction. The fourth heading, Exemption(s) Applied, would describe the exemptions applied to the redactions in the documents.

## V.  SEGREGABILITY

27. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

28. Because many withholdings contained in ICE's representative sample *Vaughn* Index are contained in records released in part and withheld in part, ICE will have to justify that it disclosed all non-exempt segregable portions of those records. Accordingly, a sampling for these records will be able to sufficiently test for ICE's compliance with the FOIA's segregability requirements.

## VI.  JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 2nd day of June, 2023.

FERNANDO PINEIRO JR
Digitally signed by FERNANDO PINEIRO JR
Date: 2023.06.02 15:27:27 -04'00'

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009