UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GILBERTO RODRIGUEZ CHAVERRA,

Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

Defendants.

Civil Action No. 18-0289 (JEB)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT DEPARTMENT OF HOMELAND SECURITY OFFICE OF INSPECTOR
GERNERAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

ANNA D. WALKER
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Phone:  (202) 252-2544
anna.walker@usdoj.gov

*Counsel for the United States of America*

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD.................................................................................................... 2

ARGUMENT ................................................................................................................ 3

   I.    The Inspector General Conducted Reasonable Searches.................................. 3

   II.   The Inspector General Properly Withheld Exempt Information...................... 10

     A.   Exemption 5...................................................................................... 11

     B.   Exemption 7 Threshold. ................................................................... 15

     C.   Exemptions 6 and 7(C) .................................................................... 17

   III.   The Inspector General Released All Reasonably Segregable Portions of Documents. . 24

CONCLUSION............................................................................................................ 26

## TABLE OF AUTHORITIES

Cases ............................................................................................................................... Page(s)

*Am. Ctr. for L. & Just. v. Dep' of Just.*,
    325 F. Supp. 3d 162 (D.D.C. 2018) ................................................................. 11
*Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review*,
    830 F.3d 667 (D.C. Cir. 2016) ........................................................................ 19
*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................... 2
*Beck v. Dep't of Just.*,
    997 F.2d 1489 (D.C. Cir. 1993) ...................................................................... 18
*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011) .......................................................................... 20
*Blanton v. Dep't of Just.*,
    63 F. Supp. 2d 35 (D.D.C. 1999) .................................................................... 19
*Boyd v. Dep't of Just.*,
    475 F.3d 381 (D.C. Cir. 2007) ........................................................................ 19
*Brayton v. Off. of U.S. Trade,*
    *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ................................................................ 2
*Brown v. Dep't of Just.*,
    742 F. Supp. 2d 126 (D.D.C. 2010) .................................................................. 5
*Campbell v. Dep't of Just.*,
    164 F.3d 20 (D.C. Cir. 1998) .......................................................................... 16
*Carter v. Dep't of Com.*,
    830 F.2d 388 (D.C. Cir. 1987) ........................................................................ 18
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 2
*Chang v. Dep't of Navy*,
    314 F. Supp. 2d 35 (D.D.C. 2004) .................................................................. 18
*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
    600 F. Supp. 114 (D.D.C. 1984) .................................................................... 13
*Clemente v. FBI*,
    867 F.3d 111 (D.C. Cir. 2017) ..................................................................... 4, 9
*Cleveland v. United States*,
    128 F. Supp. 3d 284 (D.D.C. 2015) ................................................................ 12
*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ........................................................................ 12
*Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) .................................................................... 11, 14
*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*,
    478 F. Supp. 2d 77, 80 (D.D.C. 2007) .......................................................... 2,3
*CREW v. Dep't of Homeland Sec.*,
    648 F. Supp. 2d 152, 156 (D.D.C. 2009). .................................................. 12-13
*CREW v. Dep't of Lab.*,
    746 F.3d 1082, 1094 (D.C. Cir. 2014) ........................................................... 20

*CREW v. Dep't of Just.,*
  854 F.3d 675, 682 (D.C. Cir. 2017) ................................................................ 20

*Ctr. for Biological Diversity v. A,rmy Corps of Eng'*rs,
  405 F. Supp. 3d 127 (D.D.C. 2019) ............................................................... 17

*Davis v. Dep't of Just.,*
  968 F.2d 1276 (D.C. Cir. 1992) ..................................................................... 19

*Defenders of Wildlife v. Dep't of Interior,*
  314 F. Supp. 2d 1 (D.D.C. 2004) ..................................................................... 4

*Defenders of Wildlife v. U.S. Border Patrol,*
  623 F. Supp. 2d 83 (D.D.C. 2009) ................................................................... 4

*Dep't of Def. v. Fed. Labor Rels. Auth.,*
  510 U.S. 487 (1994) ............................................................................... 10, 18

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) .................................................................................. 12, 13

*Dep't of Just. v. Reps. Comm. for Freedom of the Press,*
  489 U.S. 749 (1989) ............................................................................... 18, 19

*Dep't of Just. v. Tax Analysis,*
  492 U.S. 136 (1989) .................................................................................. 10

*Dep't of State v. Wash. Post Co.,*
  456 U.S. 595 (1982) .................................................................................. 17

*Dillion v. U.S. Dep't of Just,*
  444 F. Supp. 3d 67 (D.D.C. 2020) ................................................................... 5

*Nat'l Archives & Recs. Admin. v. Favish,*
  541 U.S. 157 (2004) .................................................................................. 19

*Fish & Wildlife Serv. v. Sierra Club, Inc.,*
  141 S. Ct. 777 (2021) ............................................................................. 13, 14

*FPL Grp. Inc. v. IRS,*
  698 F. Supp. 2d 66 (D.D.C. 2010) ................................................................. 13

*Greenberg v. Dep't of Treasury,*
  10 F. Supp. 2d 3 (D.D.C. 1998) ....................................................................... 4

*Ground Saucer Watch, Inc. v. CIA,*
  692 F.2d 770 (D.C. Cir. 1981) ......................................................................... 3

*Hall v. Dep't of Just.,*
  273 F. Supp. 3d 77 (D.D.C. 2017) ................................................................... 2

*Hamilton Sec. Group Inc. v. Dep't of Hous. & Urban Dev.,*
  106 F. Supp. 2d 23 (D.D.C. 2000) ................................................................. 14

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,*
  879 F.2d 873 (D.C. Cir. 1989) ....................................................................... 17

*Jefferson v. Dep't of Just.,*
  284 F.3d 172 (D.C. Cir. 2002) ....................................................................... 16

*Johnson v. Exec. Off. for U.S. Att'ys,*
  310 F.3d 771 (D.C. Cir. 2002) ....................................................................... 24

*Jud. Watch, Inc. v. Dep't of Just.,*
  20 F.4th 49 (D.C. Cir. 2021) ......................................................................... 12

*Jud. Watch, Inc. v. Dep't of Just.,*
  365 F.3d 1108 (D.C. Cir. 2004) ..................................................................... 11

iii

*Jud. Watch, Inc. v. Dep't of Just.*,
  800 F. Supp. 2d 202 (D.D.C. 2011) ................................................................ 24

*Jud. Watch, Inc. v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) .................................................................... 4

*Larson v. U.S. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) .......................................................................... 3

*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) .................................................................... passim

*Levinthal v. FEC*,
  219 F. Supp. 3d 1 (D.D.C. 2016) ...................................................................... 16

*Lewis v. Dep't of Just.*,
  609 F. Supp. 2d 80 (D.D.C. 2009) .............................................................. 20, 21

*Machado Amadis v. Dep't of State*,
  971 F.3d 364 (D.C. Ci. 2020) ........................................................................... 14

*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) ............................................................................ 11

*McCutchen v. Dep't of Health & Human Servs.*,
  30 F.3d 183 (D.C. Cir. 1994) ............................................................................ 10

*Media Rsch. Ctr. v. Dep't of Just.*,
  818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................ 2, 3

*Meeropol v. Meese*,
  790 F.2d 942 (D.C. Cir. 1986) ............................................................................ 5

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ............................................................................ 3

*Miller v. Dep't of Just.*,
  872 F. Supp. 2d 12 (D.D.C. 2012) .................................................................... 15

*Muhammad v. U.S. Customs & Border Prot.*,
  559 F. Supp. 2d 5 (D.D.C. 2008) ....................................................................... 3

*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
  216 F.3d 1180 (D.C. Cir. 2000) ........................................................................ 10

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) .......................................................................... 11, 12, 13

*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) .............................................................................. 4

*People for Am. Way Found v. Dep't of Just.*,
  451 F. Supp. 2d 6 (D.D.C. 2006) ....................................................................... 5

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ............................................................................ 3

*Petroleum Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ............................................................. 11, 12, 24

*Pub Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
  740 F.3d 195 (D.C. Cir. 2014) .......................................................................... 16

*Rockwell Int'l Corp. v. Dep't of Just.*,
  235 F.3d 598 (D.C. Cir. 2001) .......................................................................... 11

*Roth v. Dep't of Just.*,
  642 F.3d 1161 (D.C. Cir. 2011) ........................................................................ 18

*SafeCard Servs. Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................................ 3, 4, 5, 19
*Schrecker v. Dep't of Just.*,
   349 F.3d 657 (D.C. Cir. 2003) ........................................................................ 4, 20
*Shapiro v. Dep't of Just.*,
   34 F. Supp. 3d 89 (D.C. Cir. 2014) ....................................................................... 21
*Shepherd Conservation Soc'y v. IRS*,
   208 F. Supp. 3d 58 (D.D.C. 2016) ......................................................................... 16
*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998) ............................................................................... 19
*Steinberg v. Dep't of Just.*,
   23 F.3d 548 (D.C. Cir. 1994) ................................................................................... 5
*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ................................................................. 21, 24, 25
*Tax Analyst v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) .................................................................................. 16
*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ................................................................................. 5
*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ................................................................................. 2
*Vaughn v. Rosen*,
   523 F.2d 1136 (D.C. Cir. 1975) ....................................................................... 14, 15
*Voinche v. FBI*,
   46 F. Supp. 2d 26 (D.D.C. 1999) ..................................................................... 19, 20
*Weisberg v. Dep't of Just.*,
   627 F.2d 365 (D.C. Cir. 1980) ................................................................................. 2
*Weisberg v. Dep't of Just.*,
   705 F.2d 1344 (D.C. Cir. 1983) ............................................................................... 3
*Weisberg v. Dep't of Just.*,
   745 F.2d 1476 (D.C. Cir. 1984) ............................................................................... 4

Statutes

5 U.S.C. § 552(a)(3)(A) ............................................................................................ 5
5 U.S.C. § 552(a)(4)(B) .......................................................................................... 10
5 U.S.C. § 552(a)(6)(B)(ii) ....................................................................................... 6
5 U.S.C. § 552(a)(8)(A)(i)(I) ................................................................................... 15
5 U.S.C. § 522(b) ............................................................................................. 10, 24
5 U.S.C. § 522(b)(5) ............................................................................................... 11
5 U.S.C. § 552(b)(7)(A) ............................................................................................ 7
5 U.S.C. § 552(b)(7)(C) .......................................................................................... 18
5 U.S.C. § 552(b)(6) .............................................................................................. 17

Rules

Fed. R. Civ. P. 56(a) ................................................................................................. 2

Defendant, Department of Homeland Security Office of Inspector General ("Defendant" or "Inspector General"), respectfully moves for summary judgment in this Freedom of Information Act ("FOIA") case brought by Plaintiff Gilberto Rodriguez Chaverra, as the Administrator of the Estate of Jeancarlo Jimenez Joseph.[3]  The accompanying statement of undisputed material facts and declaration of Roy Jones, and its accompanying exhibits, support this motion and show that the undisputed record establishes that the Inspector General has conducted a reasonable search designed to locate any records responsive to Plaintiff's FOIA request, released all reasonably segregable non-exempt records to Plaintiff, and withheld only information the release of which would trigger foreseeable harm to the interests protected under FOIA Exemptions 5, 6, and 7(C). Thus, the Inspector General is entitled to summary judgment in part.[4]

## BACKGROUND

In the interest of brevity, Defendant respectfully refers the Court to its Statement of Undisputed Material Facts ("SOF") for the background facts of this case.  Furthermore, in support of Defendant's Motion for Summary Judgment, Defendant refers the Court to the declaration prepared by Roy Jones ("Jones Declaration"), as well as the exhibits attached thereto, and to the Inspector General's *Vaughn* index, attached as Exhibit 5.

---

[3]    Plaintiff has filed suit against three other Defendants, the U.S. Immigration and Custom Enforcement ("ICE"), the Assistant Director for ICE Health Services Corps, and the Department of Homeland Security's Office for Civil Rights and Civil Liberties.  DHS OIG moves separately for partial summary judgment, from these other Defendants.  For purposes of this motion, Defendant refers only to DHS OIG.

[4]    DHS OIG referred certain documents in this matter to ICE, for direct response to the requestor.  DHS OIG does not seek summary judgment with respect to withholdings in those referrals at this time, and anticipates renewing its motion for summary judgment with respect to those records when ICE files its motion for summary judgment.

**LEGAL STANDARD**

Summary judgement is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Anderson*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Id.* Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007). A government may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the Plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet this burden, the agency may rely on reasonably detailed and non-conclusory declarations. *See Hall v. Dep't of Just.*, 273 F. Supp. 3d 77, 83 (D.D.C. 2017); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citations omitted).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot.  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008).

## ARGUMENT

## I.    <u>The Inspector General Conducted Reasonable Searches.</u>

There can be no material dispute that the Inspector General fulfilled its obligation to properly search for records responsive to Plaintiff FOIA request and is, therefore, entitled to summary judgment.

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Thus,

an agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows beyond a material doubt "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

A search, however, is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured"). It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Moreover, where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). Thus, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard*, 926 F.2d at 1200); *accord Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search [for them]").

Moreover, in responding to a FOIA request, an agency looks to the "reasonabl[e] descri[ption]" of the records sought. 5 U.S.C. § 552(a)(3)(A). That is, a professional agency employee familiar with the subject area must, in light of the FOIA request framed by the requestor, be able to locate the requested records with a "reasonable amount of effort." H.R. Rep. No. 93-876, at 6 (1974), reprinted in 1974 U.S.C.C.A.N. 6271. The agency must be able to determine "precisely" which records are being requested. *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation marks omitted).  In addition, FOIA also contemplates that requests can be modified.  *See* 5 U.S.C. § 552(a)(6)(B)(ii).  A plaintiff may narrow a request even without defendant's agreement.  *See People for Am. Way Found v. Dep't of Just.*, 451 F. Supp. 2d 6, 11-12 (D.D.C. 2006).  The agency then is obligated to perform a "reasonable" search in response to the request framed by the requestor.  *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).  In addition, "[a] requestor may not challenge the adequacy of a search after an agency limits the scope of a search in response to direction from the requestor."  *See Dillion v. U.S. Dep't of Just*, 444 F. Supp. 3d 67 (D.D.C. 2020) (quotations and citations removed).

The Inspector General's conducted a reasonable and legally sufficient search for records responsive to Plaintiff's request and subject to modifications to that request at Plaintiff's direction. In doing so, the Office of Investigation's search for responsive records extended to every location

where it was reasonably likely that responsive records would be found.  *See* Jones Decl. ¶¶ 26 n.1, 31, 37.  Plaintiff's original FOIA request sought: all Inspector General "agency records of investigations, referrals, or contemplated investigations involving (1) any incident or allegation at [ICE] Stewart Detention Facility in Lumpkin, Georgia occurring on or after January 1, 2015; (2) Any suicide attempt at the Stewart Detention Facility since January 1, 2010; or (3) any allegation or incident involving CCA/CoreCivic or its personnel since January 1, 2010."  Plaintiff's FOIA Request, Ex. 1; Jones Decl. ¶ 24.  Plaintiff also stated that "this request includes, but is not limited to any [Inspector General] records relating to the detention, death, or subsequent investigation of Jeancarlo Jimenez Joseph."  *Id.*

Based on this request for "records of investigations, referrals, or contemplated investigations," on November 2, 2017, the Inspector General's FOIA unit assigned the request to the Office of Investigations, which is the only program office within the Inspector General that conducts, contemplates, and responds to referrals (or complaints) for investigations.  *See* Jones Decl. ¶ 25.  The Inspector General maintains complaint and investigation-related files in the electronic database, Enterprise Data System (or "EDS").  *See id.* ¶ 23.  Hard copies of records related to an investigation may also be stored in case files maintained at the investigating field office or the Inspector General's Sensitive Compartmented Information Facility.  *See id.*  The Inspector General, however, uses its Enterprise Data System to manage information relating to all complaints and investigations of alleged criminal, civil, or administrative violations by Department employees, contractors, grantees, beneficiaries, and other individuals and entities associated with the Department, and manage investigations born from those complaints to facilitate the tracking of resources used in investigative activities.  *See id.*

Shortly after the Office of Investigations was assigned Plaintiff's FOIA request, it determined that the investigation related to Jeancarlo Jimenez Joseph (I17-15215) was ongoing. *See id.* ¶ 26. Therefore, the Office of Investigation preserved all records responsive to this request at the time, but decided to withhold those records under FOIA Exemption 7(A), which authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *see* Jones Decl. ¶¶ 26, 30. Meanwhile the Office of Investigations ran an initial search of its Enterprise Data System using search terms and parameters derived from Plaintiff's FOIA request to gather a list of all complaints and investigations responsive to items 1 through 3 of Plaintiff's request. *See id.* ¶¶ 26-27.

After Plaintiff filed the Complaint in this matter, however, the Inspector General and Plaintiff met and conferred to discuss Plaintiff's concerns over the appropriate scope of any search responsive to Plaintiff's request. *See id.* ¶¶ 28-29. Based on these discussions, the Inspector General ran a second search in May 2018 for all complaints and investigations maintained in its Enterprise Data System, responsive to items 1 through 3 of Plaintiff's request. *See id.* ¶ 29. Specifically, this search sought all complaints and investigations that pertained to ICE, from the period of January 1, 2015 to May 2, 2018 and that contained in the search terms "Stewart Detention Facility" or "Stewart Detention Facility" and "suicide" and all complaints and investigations from the same period that contained the search terms "CCA" or "Core Civic." *See id.* The results of this search yielded an Excel spreadsheet containing all potentially responsive complaints and investigations that met the criteria of the Office of Investigations' second May 2018 search, ("May

2018 Spreadsheet"), which the Office of Investigation returned to the FOIA unit for a further responsiveness review. *See id.*

The parties then conferred further and Plaintiff agreed to the Inspector General producing only the Reports of Investigation for responsive investigations identified from the May 2018 search, with the understanding that after Plaintiff reviewed these Reports, Plaintiff would follow-up with any request for the underlying investigation records related to any particular Report. *See id.* ¶ 31. Based on the May 31, 2018 discussion, a request was sent to the Office of Investigations to begin pulling responsive Reports of Investigation from its Enterprise Data System. *See id.* No field offices were searched at this time based on Plaintiff's request for Reports only, with the understanding that after Plaintiff reviewed these Reports, Plaintiff would follow up with any request for the underlying investigation records related to any particular Report. *See id.*

On July 2, 2018, the Inspector General issued a second interim response producing the records responsive to Plaintiff's request for ROIs. *See id.* ¶ 32. Specifically, the Inspector General identified eleven investigations responsive to Plaintiff's FOIA request, for which it produced the ROIs and related Memorandum Activity. *See id.* Plaintiff never indicated to the Inspector General that Plaintiff wanted any additional records related to the underlying investigations associated with the ROIs. *See id.* The Inspector General then indicated that the only type of record responsive to Plaintiff's request that remained at issue were 1,000 complaints identified as potentially responsive to items 1-3 of Plaintiff's FOIA request. *See id.*

As to complaints, the parties then spent a significant amount of time conferring to narrow the type of complaint that Plaintiff wanted the Inspector General to produce. *See id.* ¶¶ 32-37; *see also* Jt. Status Reps., ECF Nos. 20, 22, 24. To resolve this remaining issue as to the outstanding complaints, Plaintiff asked to review a spreadsheet containing a list of unsubstantiated complaints

identified in response to Plaintiff's FOIA request.  *See id.* ¶ 33.  Accordingly, on September 10, 2018, the Inspector General produced to Plaintiff a spreadsheet of the unsubstantiated complaints that were identified in the May 2018 Spreadsheet gathered from the Office of Investigation's second search conducted in May 2018.  *See id.* ¶¶ 34 & n.4.  After reviewing the spreadsheet of unsubstantiated complaints and requesting the Inspector General produce a representative sampling of complaint materials, which the Inspector General did, Plaintiff eventually informed the Inspector General that Plaintiff wanted all materials related to the unsubstantiated complaints identified from the May 2018 Spreadsheet and no other documents.  *See id.* ¶¶ 35-37.  Thus, the Office of Investigations ran a search of its Enterprise Data System to gather all material related to the unsubstantiated complaints identified from the May 2018 Spreadsheet and produced that material to Plaintiff on a rolling basis until it made its final production on April 7, 2020.  *See id.* ¶¶ 38-39; Jt. Status Rep., ECF No. 27 at 2.

Meanwhile, after the investigation related to Jeancarlo Jimenez Joseph (I17-15215) closed, the Office of Investigations ran another discretionary search on August 12, 2019 for responsive records to the "detention, death, or subsequent investigation of Jeancarlo Jimenez Joseph," by searching its Enterprise Data System and by searching the field office that conducted this investigation, which gathered all records saved in the case file for that investigation located in the field office. *See id.* ¶ 26 n.1; Ex. 1.  Thereafter, all records responsive to this request were produced to Plaintiff on August 26, 2019.  *See id.*

In light of the undisputed record discussed above, the Inspector General "made a good faith effort" to conduct a search for the requested records and as modified by Plaintiff, "using methods which can be reasonably expected to produce information requested." *Clemente*, 867 F.3d at 117.

Accordingly, the Inspector General is entitled to summary judgment with respect to the adequacy of its search.

## II.    **The Inspector General Properly Withheld Exempt Information.**

FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysis*, 492 U.S. 136, 150-51 (1989).  Thus, although "disclosure . . . is the dominant objective of FOIA," *Dep't of Def. v. Fed. Labor Rels. Auth.*, 510 U.S. 487, 494 (1994) (cleaned up), FOIA does not allow the public to have unfettered access to government files.  *See McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  The government agency bears the burden of demonstrating that the documents it has withheld fall into one of FOIA's nine exemptions from disclosure.  *See* 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

After completing searches reasonably calculated to uncover all records responsive to Plaintiff's FOIA request, the Inspector General produced 3,862 pages of responsive records to Plaintiff, 11 of which were withheld in full and 2,533 of which were withheld in part.[5]  Jones Decl. ¶ 39.  Plaintiff, through counsel is not challenging the Inspector General's withholdings contained in interim responses 11 to 17, but continues to challenge hundreds of pages withheld in part pursuant to Exemption 6 and 7(C) and 11 pages of draft Memorandum of Activity that the

---

[5]    During its review of responsive records, the Inspector General referred records to ICE. The Inspector General referred 210 pages of records on July 2, 2018, six pages of records on March 7, 2019, 261 pages of records on August 26, 2019, and one page on September 19, 2019 for ICE's review and processing.  *See* Jones Decl. ¶ 40.  As previously mentioned, the Inspector General does not seek summary judgment with respect to withholdings in those referrals, which will be addressed in a declaration from ICE, submitted in connection with ICE's summary judgment motion.

Inspector General withheld in full pursuant to Exemption 5.[6]  *See id.* ¶ 42; Jt. Status Rep., ECF No. 75 at 2.  Because the undisputed record demonstrates that the Inspector General properly withheld any information contained in these pages pursuant to Exemptions 5, 6, and 7(C), the Court should grant the Inspector General summary judgment as to the propriety of its withholdings.

### A.    Exemption 5

The Inspector General's withholdings pursuant to Exemption 5 are appropriate. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Thus, this exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).  Here, the only privilege the Inspector General asserted to support its Exemption 5 withholdings was the deliberative process privilege.

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative."  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  "A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made."  *Petroleum Info. Corp. v. Dep't of*

---

[6]    "Just as a party may agree to narrow the case during a pretrial conference, a FOIA plaintiff may agree to do so in a written status report."  *Am. Ctr. for L. & Just. v. Dep' of Just.*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018).  Here, "having voluntarily narrowed" the total number of withholdings Plaintiff challenges in this case, Plaintiff "may be said to have waived the others."  *Id.*

*Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).  "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'"  *Cleveland v. United States*, 128 F. Supp. 3d 284, 298-99 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

"Material is deliberative if it reflects the give-and-take of the consultative process."  *Petroleum Info.*, 976 F.2d at 1434.  When conducting the deliberativeness inquiry, the D.C. Circuit has instructed courts to "focus[] on whether disclosure of the requested material would tend to discourage candid discussion within an agency."  *Id.*  This is because the deliberative process privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021).

The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions."  *Petroleum Info.*, 976 F.2d at 1433-34 (internal quotations omitted).  Thus, three policy purposes have been held to constitute the bases for the deliberative process privilege to prevent injury to the quality of agency decisions: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are adopted; and (3) to protect against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision.  *See Sears*, 421 U.S. at 151-53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C.

2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). Finally, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

Here, the Inspector General has properly invoked Exemption 5 to withhold 11 pages in full comprising draft investigative material, specifically draft Memorandum of Activity, which are "enclosures to its reports of investigation and typically consist of interviews of witnesses and/or summarization of actions taken during the course of an ongoing investigation." Jones Decl. ¶ 49. As an initial matter, each of these draft Memorandum of Activity meet the threshold of being inter- or intra-agency documents. "Intra-agency" memorandum generally refers to those documents "addressed both to and from employees of a single agency." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9-10 (2001). As Mr. Jones explains, the draft Memorandum of Activity in this case were specifically attached to responsive emails sent between employees within the Office of Investigation for internal review. *See* Jones Decl. ¶¶ 45, 48. And, while the Inspector General has produced final versions of these draft Memorandum of Activity, the draft versions withheld in full have never been shared publicly. *See id.* ¶¶ 48, 52.

Second, each of the withheld draft Memorandum of Activity are predecisional because as Mr. Jones explains, these drafts have not been finalized and remain in draft form. *See* Jones Decl. ¶ 49; *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 782 (2021) ("What matters is if the agency treats the document as its final view"). Nor, moreover do these drafts reflect a final decision by the agency. *See* Jones Decl. ¶ 50; *Sierra Club*, 141 S. Ct. at 785 (finding the rationale

behind the deliberative process privilege "does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done."). As Mr. Jones testifies, until finalized, draft Memorandum of Activity are reviewed for edits and comments by the "reviewing official," and therefore do not reflect a final decision by the agency in the investigation. *See id.* ¶ 50; *see Hamilton Sec. Group Inc. v. Dep't of Hous. & Urban Dev.*, 106 F. Supp. 2d 23, 30 (D.D.C. 2000) (protecting draft audit report that was never reviewed by agency decisionmaker; holding that "only those materials that are reviewed and approved by the District Inspector General represent the agency's final position"). Thus, while the Inspector General's produced finalized copies of the Memorandum of Activity that were approved by the reviewing official, those that were not finalized, were withheld in full. *See* Jones Decl. ¶¶ 43, 49-52.

Third, the withheld draft Memorandum of Activity are deliberative. *See id.* ¶ 50. Deliberative records are those "prepared to help the agency formulate its position," *Sierra Club*, 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm.*, 3 F.4th at 364. In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id.* (quoting *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Ci. 2020)); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating that documents part of the deliberative process make recommendations or express opinions on legal or policy matters). Here, Mr. Jones explains that the draft Memorandum of Activity are "considered an integral part of [the] Office of Investigations decision-making process that relate to open investigation." Jones Decl. ¶ 50. As previously mentioned, prior to being finalized, the draft Memorandum of Activity undergo review by the Reviewing Official for edits and comments,

which can effect the scope and direction of an ongoing investigation prior to its finalization.  *See id.*

Finally, in applying these deliberative process privilege withholdings, the Inspector General conducted a foreseeable harm analysis to ensure it withheld only information it reasonably foresees the disclosure of which would harm an interest protected by Exemption 5.  *See* 5 U.S.C. § 552(a)(8)(A)(i)(I); *see e.g.* Jones Decl. ¶ 51.  Specifically, the Inspector General determined that revealing these draft Memorandum of Activity could cause foreseeable harm to "the quality of [the agency's] decision" by implicating two interests protected by the deliberative process privilege: candor and confusion of the Agency's policies.  *Id.*  As Mr. Jones explains, releasing the draft Memorandum of Activity would cause a "chilling effect on communication between agency employees that hinder the exchange of ideas, including ideas, questions, and concerns regarding the scope and direction of a [Inspector General] ongoing investigation."  *Id.*  In addition, providing the public access to the draft investigative documents could "lead to significant public confusion, and the public dissemination of inaccurate information and conclusions regarding the investigation prior to the Inspector General finalizing and releasing its final outcome and report."  *Id.*

Thus, because the undisputed record shows that the draft investigated documents that the Inspector General withhold in full under Exemption 5 were intra-agency memorandum, and were predecisional and deliberative, the Court should grant the Inspector General summary judgment as to this issue.

### B.    Exemption 7 Threshold.

"Exemption 7 protects from disclosure 'records or information compiled for law enforcement purposes,' but only to the extent that disclosure of such records would cause an enumerated harm listed in Exemption 7's subsections."  *Miller v. Dep't of Just.*, 872 F. Supp. 2d

12, 24 (D.D.C. 2012) (citing 5 U.S.C. § 552(b)(7)).  Thus, to establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. Dep't of Just.*, 284 F.3d 172, 177 (D.C. Cir. 2002)) (additional citations omitted).  A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Further, where, as here, "the agency's principal function is law enforcement, courts are 'more deferential' to the agency's claimed purpose for the particular records." *Pub Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Tax Analyst v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002)).

Here, the Inspector General meets the requirements of a law enforcement agency, as one of its functions is to "investigate allegations of criminal, civil, and administrative misconduct involving [Department] employees, contractors, grantees, and programs." Jones Decl. ¶¶ 22, 55, 57-61.  More specifically, such investigative function is the primary mission of the Office of Investigations, from which the Inspector General obtained all records responsive to Plaintiff's FOIA request.  *See id.* ¶¶ 22, 25.  Here, the records comprise Reports of Investigation and Memorandum of Activity, which document the Inspector General's investigatory processes and

16

which can lead to criminal prosecutions or administrative actions. *See id.* ¶ 54. Thus, the records at issue were plainly compiled for law enforcement purposes and meet the Exemption 7 threshold.

### C.    Exemptions 6 and 7(C)

The Inspector General withheld names and other identifying information pertaining to third parties pursuant to Exemptions 6 and 7(C), in tandem, throughout the thousands of pages of investigatory records that it released to Plaintiff in response to Plaintiff's FOIA request. *See* Jones Decl. ¶ 55.

Exemption 6 protects "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."). After that, the agency must "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Ctr. for Bio. Diversity v. Army Corp. of Eng'rs*, 405 F. Supp. 3d 127, 143 (D.D.C. 2019) (quoting *Lepelletier*, 164 F.3d at 46).

In making this determination, the D.C. Circuit has ruled that agencies must first identify whether disclosure of the protected information "would compromise a substantial, as opposed to de minimis, privacy interest." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). The threat to that privacy on account of disclosure must also be real rather than speculative. *See id.* at 878. In assessing the applicability of Exemption 6, courts weigh the

"privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492. Plaintiff bears the burden of demonstrating that the release of the withheld documents would serve this public interest. *See Carter v. Dep't of Com.*, 830 F.2d 388, 390-92 nn.8, 13 (D.C. Cir. 1987).

Likewise, FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C) . . . is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). Where the information in question was compiled for law enforcement purposes, courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.* Under both Exemptions 6 and 7(C), the agency must engage in a balancing test to determine whether the public

interest in disclosure is outweighed by a significant private interest in non-disclosure. *See Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review*, 830 F.3d 667, 673-74 (D.C. Cir. 2016).

"In order to trigger the balancing of public interests against private interests, a FOIA requestor must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest." *Boyd v. Dep't of Just.*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)). If the public interest cited by a requestor in attempting to overcome the privacy exemption is official misconduct, then the requestor must "produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred." *Id.*

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to."' *Davis v. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reps. Comm*, 489 U.S. at 773). Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7(C). *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 41 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at 1282); *cf. SafeCard Servs.*, 926 F.2d at 1206 (public interest in disclosure of third-party identities is "insubstantial"). In the absence of any evidence that the government agency has engaged in illegal activity, information that interferes with a third party's privacy is exempt from disclosure. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998); *Voinche v. FBI*, 46 F. Supp. 2d 26, 33 (D.D.C. 1999).

Here, the Inspector General invoked Exemptions 6 and 7(C) in tandem to withhold portions of hundreds of pages of investigative material that contained the names and other identifying information of third parties, including alien numbers, email addresses, direct telephone numbers,

signatures, and identifying physical characteristics. *See* Jones Decl. ¶ 55. The third parties, to whose information the Inspector General applied this exemption, include the subjects of its investigations, complainants, witnesses, lower-level government employees, medical professionals, and its investigative personnel and law enforcement officers. *See id.* In addition, Plaintiff provided no authorization from those third parties, whose names and other identifying information is withheld, that would otherwise permit the Inspector General to release their records to Plaintiff, nor supplied proof of death. *See id.* Thus, absent a showing that overriding public interest exists to compel disclosure, such records are protected under Exemptions 6 and 7(C).

As an initial matter, this Court, may find such withholdings proper as a categorical matter because the names of third parties contained in investigative files, like those at issue in this case, are "presumptively exempt" under Exemption 7(C). *See CREW v. Dep't of Lab.*, 746 F.3d 1082, 1094 (D.C. Cir. 2014). Indeed, the D.C. Circuit has "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, informants," *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003), and "federal government personnel." *CREW v. Dep't of Just.*, 854 F.3d 675, 682 (D.C. Cir. 2017); *accord Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) ("As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information."). Thus, where the Inspector General attests that it has applied Exemption 7(C) to names and identifying information of subjects, complainants, witnesses, lower-level government employees, medical professionals, and investigative personnel and law enforcement officers, absent an overriding public interest in its disclosure, the Court can conclude that such exemptions are proper. *See Lewis v. Dep't of Just.*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009). And, as Mr. Jones explains, here, there is no overriding public interest in the

disclosure of the names and other identifying information of such third parties.  *See* Jones Decl. ¶¶ 57-61.  The Inspector General's mission is to investigate criminal, civil, and administrative misconduct of Department employees, which the Reports of Investigation and Memorandum of Activity produced in this case document.  *See id.*

To be sure, the other identifying information that the Inspector General withheld is also, more specifically, the type that Courts have held would reveal the identities of private individuals and government personnel including direct telephone numbers, alien numbers, and identifying physical characteristics.  *See Shapiro v. Dep't of Just.*, 34 F. Supp. 3d 89, 96-97 (D.C. Cir. 2014) (affirming the withholding of names, telephone numbers, and other identifying information of third parties, law enforcement personnel, and other federal employees); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (withholding the names, addresses, telephone numbers, social security numbers and other private information about law enforcement officers, other government employees, and third parties other than a third party who had authorized the release of records about himself to the requester).  According to Mr. Jones, the Inspector General also only withheld the portions of email addresses and signatures that would reveal the names or identities of an individual, but did not withhold agency email domain names or individual job titles and positions.  *See* Decl. Jones ¶¶ 60, 64.  Thus, the Court can be assured that the names and other identifying information that the Inspector General withheld in this case is proper.

In addition, if the Court were to reach the merits of the Inspector General's application of Exemption 6, to protect the release of these same names and other identifying information, the undisputed record demonstrates that the balance of private and public interests weighs against disclosure.  First, all information withheld under Exemption 6 applies to an individual and therefore qualifies as similar files under Exemption 6.  *See* Jones Decl. ¶ 55; *Lepelletier*, 164 F.3d

at 47.  Next, there is a substantial privacy interest against the disclosure of the names and other identifying information of subjects, witnesses, complainants, government personnel, medical professionals, and lower-level investigative personnel and law enforcement personnel.

Specifically, the Inspector General properly found that subjects of its investigations have a substantial privacy interest in not having their identities disclosed.  *See* Jones Decl. ¶ 57.  Being identified as a subject of an Inspector General investigation carries a strong negative connotation and a stigma, regardless of whether these individuals every committed misconduct.  *See id.* Release of the identities of these individuals to the public could subject them to harassment and embarrassment, as well as undue public attention.  Furthermore, it could result in professional and social repercussions.  *See id.*

Similarly, the Inspector General properly found that witnesses and complainants, who provided or could provide information to it during its investigations, have a strong privacy interest in not having their identities disclosed in those same investigative records.  *See* Jones Decl. ¶ 58. The release of names and other identifying information of witnesses and complainants contained in these investigative files could subject these individuals to especially serious harassment, intimidation, physical harm, and suspicion because of any negative connotation in the disclosure of information regarding purported criminal, civil, and administrative misconduct.  *See id.*  This fear of reprisal, moreover, creates a tendency to withhold information that undermines the mission of the Inspector General to investigate misconduct.  *See id.*  To surmount this fear, identifying information must be held in strict confidence.  *See id.*

In addition, the Inspector General also properly determined that other third-parties including lower-level government employees and medical professionals have more than a *de minimis* privacy interest to protect their names and other identifying information contained in these

investigative files from disclosure. *See* Jones Decl. ¶ 60. Publicity, adverse or otherwise, concerning the assistance of these government employees and medical professionals in an investigation or with investigative activities would seriously impair these professionals' effectiveness in assisting with or participating in future investigations or investigative activities, as disclosure might subject these individuals to unnecessary, unofficial questioning regarding the investigation. *See id.* Likewise, the public association with an Inspector General investigation could also trigger hostility toward these employees by those with strong opinions either way toward the entity or person being investigated. *See id.*

Finally, the Inspector General properly determined that its investigators and law enforcement personnel have a strong privacy interest against the disclosure of their names and other identifying information in specific investigation files. *See* Jones Decl. ¶ 61. The rational for protecting the identities of these investigative personnel and law enforcement is similar to protecting other government employees and third-party professionals identified above. *See id.* Publicity, adverse or otherwise, arising from a particular investigation, may seriously prejudice these individual's effectiveness in conducting investigations and in performing day-to-day work. *See id.* This is because the nature of the Inspector General's work is often sensitive. *See id.* Disclosing their identities could, therefore, subject them to harassment that would also invade their privacy and could cause them to be targeted by those with strong opinions either way toward the entity or person being investigated. *See id.*

In contrast, disclosing personal information about any of the individuals identified in the four categories above would not shed light on or significantly increase the public's understanding of the Inspector General's operations and activities, which is to investigate criminal, civil, and administrative misconduct of Department employees, which the compiled Reports of Investigation

and finalized Memorandum of Activity provide instead.  *See id.* ¶¶ 57-61.  In addition, under Inspector General Act of 1978, the Inspector General has a statutory obligation to protect a complainant's or witness's identity, which factored into its assertion of Exemptions 6 and 7(C) to protect the substantial privacy interest of Department employees and third parties named in these records.  *See id.* ¶¶ 57, 59

Thus, after balancing these interests, the Inspector General concluded that the names and other identifying information of subjects, witnesses, complainants, medical professionals, lower-level government employees, including investigative personnel and law enforcement officers, if disclosed, would work a clearly unwarranted invasion of personal privacy by subjecting all groups of individuals to harassment.  *See id.* ¶¶ 57-61.  Because the undisputed record supports this same conclusion, the Court should find that the Inspector General's application of Exemption 6 to the names and other identifying information of these individuals, in tandem with Exemption 7(C), was proper and therefore grant summary judgment on the same issue to the Inspector General.

## III.    The Inspector General Released All Reasonably Segregable Portions of Documents.

An agency must provide the FOIA requestor with any reasonably segregable portion of a record after deletion of the portions which are exempt.  5 U.S.C. § 522(b).  Segregable information that is "inextricably intertwined" with exempt material need not be provided.  *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  The "'burden is on the agency' to show that the requested material falls within a FOIA exemption."  *Jud. Watch, Inc. v. Dep't of Just.*, 800 F. Supp. 2d 202, 209 (D.D.C. 2011); *Petrol. Info. Corp. v. Dep't of Interior,* 976 F.2d 1429, 1433 (D.C. Cir. 1992).  The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117

(D.C. Cir. 2007).  If the requester successfully rebuts this presumption, the burden lies with the agency to show that no segregable, non-exempt portions were withheld.  *Id.*

Here, the Inspector General conducted a line-by-line review to identify all information exempt from disclosure or for which a discretionary waiver of exemption could be applied.  *See* Jones Decl. ¶ 69.  As for records that were released, all information not exempted from disclosure under FOIA's nine exemptions, was correctly segregated and non-exempt portions were released.  *See id.*  ¶ 70.  Specifically, the Inspector General did not withhold any non-exempt information on the grounds that it was non-segregable.  *See id.*  Any further release of information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions.  *See id.*  Accordingly, the Inspector General released all reasonably segregable potions of records responsive to Plaintiff's request, the release of which would not cause foreseeable harm.  *See id.*  ¶ 71.

*        *        *

**CONCLUSION**

Accordingly, for all of the reasons set forth above and in the accompanying declaration, the Inspector General respectfully submits that motion for partial summary judgment should be granted.

Dated: June 16, 2023                                    Respectfully submitted,

                                                        MATTHEW M. GRAVES
                                                        D.C. Bar No. 481052
                                                        United States Attorney

                                                        BRIAN P. HUDAK
                                                        Chief, Civil Division

                                        By:     */s/ Anna D. Walker*
                                                        ANNA D. WALKER
                                                        Assistant United States Attorney
                                                        601 D Street, NW
                                                        Washington, DC 20530
                                                        Phone:  (202) 252-2544
                                                        anna.walker@usdoj.gov

                                                        *Counsel for the United States of America*

26