UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERTO RODRIGUEZ CHAVERRA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 18-0289 (JEB) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR ORDER TO USE
A REPRESENTATIVE SAMPLE *VAUGHN* INDEX**

　　　　Defendants, U.S. Immigration and Customs Enforcement ("ICE"), and ICE's Assistant Director for the Department of Homeland Security ("DHS"), ICE Health Services Corps., respectfully reply in further support of their motion for an order directing the parties to use a representative sample *Vaughn* index ("Sample Index"), as proposed by ICE, in the parties' anticipated cross motions for summary judgment.[1] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Despite Plaintiff's arguments to the contrary, Defendants have filed their motion to use a Sample Index in good faith and have demonstrated that such Sample Index is warranted in light of the voluminous FOIA exemptions at issue in this case. Moreover, Defendants have sufficiently demonstrated that the proposed method for gathering this Sample Index will be representative of ICE's whole production and Plaintiff's single objection to the contrary lacks merit. Finally, Plaintiff's assertion that using a Sample Index would be incompatible with establishing the requisite showing of foreseeable harm is simply unsupported, as evidenced by the fact that Courts

---

[1] For purposes of this reply, "the parties" refers to Defendants, ICE and ICE's Assistant Director for DHS, ICE Health Services Corps., and Plaintiff. *See* Compl. ECF No. 1.

have successfully relied on sample *Vaughn* indices to grant the government summary judgment even after the passage of the FOIA Improvement Act, which codified the foreseeable harm requirement.

**ARGUMENT**

    **I.   Defendants File this Motion in Good Faith After Plaintiff Would Not Agree to the Parties Joint Utilization of a Sample Index.**

Plaintiff begins its response by suggesting that, before moving for use of a Sample Index, Defendants refused to negotiate in good faith because Defendants rejected all three of Plaintiff's proposed Sample Indices. This is not true. As Defendants addressed in their opening brief, negotiations over the parties' use of a Sample Index broke down after Plaintiff first refused to compile a representative sample *Vaughn* index—Plaintiff selected 400 pages from only four of ICE's twenty-four interim releases—and then, second, walked back Plaintiff's prior agreement that any negotiated index would be used by both parties for purposes of their respective cross-summary judgment motions. *See* Defs.' Op. Br., ECF No. 81 at 2–3.[2] In other words, negotiations ended when Plaintiff admitted that Plaintiff wanted to move for summary judgment with respect to all withholdings, thus defeating the purpose of using a Sample Index, while also still dictating the sample of pages ICE could use for its summary judgment motion, which might never hold up on summary judgment because that sample was not representative. *See* Apr. 19, 2022 Joint Status Report, ECF No. 77 at 6 & n.2; *See* Ex. 6, ECF No. 81-2, at 85.

Indeed, Plaintiff's response does not address and therefore concedes Defendants' argument that the 400 pages Plaintiff first proposed to use as a representative sample of ICE's total

---

[2]     Unless indicated otherwise, Defendants' reference to documents contained in the record relies on ECF-generated pagination for all pincites.

production was not in fact representative.³  *See* Apr. 19, 2022 Joint Status Report at 6 n.2.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, 'a court may treat those arguments that the plaintiff failed to address as conceded.'") (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997)).  Although Plaintiff did propose two additional methods for making its initial proposed Sample Index purportedly more representative of all of ICE's productions, Plaintiff conveniently omits from its response the fact that when Plaintiff offered these proposed corrections, Plaintiff had already walked back its agreement to use any proposed Sample Index for purposes of Plaintiff's own summary judgment motion.⁴  *See* Ex. 6 at 85.  At bottom, Plaintiff attempts to suggest that the Court should deny this motion on grounds that Defendants failed to confer with Plaintiff first in good faith.  Because the record demonstrates otherwise, the Court should dismiss this argument as lacking merit.

**II.     Defendants Satisfy the Threshold Showing that a Sample Index is Warranted.**

Plaintiff claims that Defendants fail to establish the threshold showing that a Sample Index is necessary because "it would not realistically be possible to review each and every one."  *See* Pl.'s Resp., ECF No. 81 at 4 (quoting *Weisberg v. Dep.'t of Just.*, 745 F.2d 1476, 1490 (D.C. Cir. 1984)).  But as Defendants' opening brief established, the D.C. Circuit has more recently

---

³       For this reason, ICE suggested that the parties could use Plaintiff's first proposed Sample Index of 400 pages on the condition that Plaintiff waive all challenges to any category of exemption not captured in the 400-page sample.  *See* Ex. 6 at 87.  Plaintiff refused this suggestion.  *See id.*

⁴       Notably, Defendants do not believe that Plaintiff's third proposed Sample Index cures the problems with Plaintiff's first proposed Sample Index for three reasons: (1) it does not ensure that all withholdings are captured in the sample; (2) it does not account for what to do if the last ten pages in any interim release fail to contain any withholdings; and (3) it does not ensure that the Sample Index comprises an equal proportion of pages from each interim release to ensure that the sample is more representative of the whole.

underscored that such sampling is appropriate "when a large number of documents are involved," as this would allow "the court and the parties to reduce a voluminous FOIA exemption case to a more manageable number of items that can be evaluated individually through a *Vaughn* index[.]" *Bonner v. Dep't of State*, 928 F. 2d 1148, 1151 (D.C. Cir. 1991).  Thus, Courts in this District have upheld representative sample *Vaughn* indices used to reduce, for example, 3,987 pages of withholdings down to a more manageable 402 pages.  See *Schoenman v. FBI*, 763 F. Supp. 2d 173, 180 (D.D.C. 2011); *see also Fensterwald v. CIA*, 443 F. Supp. 667, 669 (D.D.C. 1977) (approving a sample of 63 of 1,776 documents); *Peay v. Dep't of Just.*, Civ. A. No. 04-1859 (CKK), 2007 WL 788871, at *1 (D.D.C. Mar. 14, 2007) (accepting a representative sample of 315 pages out of approximately 3,887 that were withheld in full or in part); *All. Defending Freedom v. IRS*, Civ. A. No. 15-0525 (D.D.C. Dec. 22, 2016), ECF No. 23 (finding "that 10,850 fully withheld pages is sufficiently voluminous to permit a sample *Vaughn* Index in lieu of a complete *Vaughn* Index."); *c.f. Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 107-08, 111 (D.D.C. 2014) (accepting a random sample where agency fully withheld 1,416 documents); *Bonner*, 928 F.2d at 1149–51 (permitting sampling for 1,033 partially withheld records).

Here, by comparison, ICE has produced approximately 12,079 pages to Plaintiff, of which 6,991 contain withholdings in full or in part, plus one spreadsheet, which it proposes to reduce to a more manageable volume of approximately 470 pages in its Sample Index.  As it generally takes ICE approximately 14 months to review 7,000 pages at a reasonable processing rate of 500 pages per month, *see* Defs' Opp'n Mot. Part. Summ J., ECF No. 50, at 6, it is more than appropriate to permit a representative sampling of the 7,000 pages of withholdings at issue in this case given the documented constraints on the agency's time and resources that affect its reasonable processing rates.  *See id.*  Thus, this figure alone—7,000 pages of withholdings—is enough to establish that a

4

full *Vaughn* index would unnecessarily burden "'the limitations of time and resources that constrain agencies, courts, and FOIA requesters alike.'" *See Comp. Ent. Inst. v. EPA*, Civ. A. No. 12-1617 (JEB), 2013 WL 12453279 (D.D.C. June 27, 2013) (citing *Bonner*, 928 F.2d at 1151).

Plaintiff asks the Court to deny Defendants' request for a Sample Index because Plaintiff speculates that ICE has capacity to index 7,000 pages of withholdings because it uses processing software. *See* Pl.'s Resp. at 4. But Plaintiff's argument misses the mark on two fronts. First, 7,000 pages is still a large enough number to warrant sampling, even with the aid of processing software. Indeed, even with processing software, Courts have held that most agencies still can only reasonably process 500 pages per month per FOIA request. *See e.g. Nat'l Sec. Couns. v. Dep't of Just.*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) (recognizing agency's 500 page per month policy "serves to promote efficient responses to a larger number of requesters"); *Middle East Forum v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 187 (D.D.C. 2018) ("500 pages per month is an appropriate rate of production."); *Negley v. Dep't of Just.*, 305 F. Supp. 3d 36, 47 (D.D.C. 2018) ("agency's assessment that its 'standard rate of 500 pages per month' [is] appropriate"). Second, even if ICE has processing software, Plaintiff forgets that the purpose of a Sample Index is not only to reduce the burdens on ICE to itemize each and every withholding at issue in a "voluminous FOIA exemption case," like this one, but to also reduce the burdens on the opposing party and the Court in reviewing, responding to, and ruling on that *Vaughn* index. *See Bonner*, 928 F.2d at 1151. Thus, because Plaintiff does not appear to contest that 7,000 pages of records is large enough to warrant a Sample Index, for this reason alone, the Court should find such sampling appropriate.

### III. The Method of Sampling Proposed By Defendants is Representative of the Whole.

Plaintiff alleges that ICE's proposed Sample Index is not representative of the whole because ICE has not explained how its proposed sampling method will ensure a representative sampling. *See* Pl.'s Resp. at 4–5. But Plaintiff apparently misunderstands ICE's proposed method for gathering the Sample Index, because Plaintiff's response ignores part of ICE's proposed sampling method that would allow ICE to review the random sample it gathers first, and add pages for any exemptions missing from that sample. *See id.*; *but see* Decl. of Fernando Pineiro ("Pineiro Decl."), ECF No. 81-1, ¶ 24. Specifically, as ICE's FOIA Director, Fernando Pineiro explained in his declaration, ICE proposes to first take a random sampling of every 15th page of ICE records produced that contain withholdings.[5] *See Meeropol v. Meese*, 790 F.2d 942, 948 (D.C. Cir. 1986) (explaining that a random sample is counting out all documents withheld and removing everyone that falls at a certain interval). Then, after conducting this random sampling, ICE proposes to take the "additional step" of "review[ing] these pages to ensure that there is at least one withholding for each of the five FOIA exemptions, with the understanding that such withholdings are likely to appear in frequency proportional to the frequency by which they were applied to the whole production. If any exemption is missing from the [Sample Index], ICE will add an additional page to the [Sample Index] containing that missing exemption, without removing any other page[.]" *See* Pineiro Decl. ¶ 24.

Plaintiff takes issue with the fact that a random sample comprising every 15th page of ICE records containing withholdings would, as an initial matter, likely render a sample of withholdings appearing in frequency proportional to the frequency they appear in the whole production. Plaintiff

---

[5] Plaintiff's response appears to refer back to Mr. Pineiro's declaration, but misspells Mr. Pineiro's last name as "Pinheiro." *See* Pl.'s Resp. at 4.

6

asks, "how is this possible?" *See* Pl.'s Resp. at 5. The answer is that "one expects a properly-drawn random sample to be representative of the population from which it comes." The Sedona Conference, *The Sedona Conference Commentary on Achieving Quality in the E-Discovery Process*, 15 Sedona Conf. J. 265, 302 (2014). To this end, the method of random sampling—taking every chronological page in production that falls at the same interval—has been widely used by courts over many years to ensure a means of collecting an unbiased sample from which the Court can extrapolate to the whole. *See, e.g.*, *All. Defending Freedom*, ECF No. 23, at 8 (providing for sampling of every 50th page of documents fully withheld); *Competitive Enter. Inst.*, 2013 WL 12453279, at *2 (D.D.C. June 27, 2013) (sampling of every 10th fully withheld document and every 100th partially withheld document); *Meeropol*, 790 F.2d at 956 (sampling of every 100th page); *Weisberg*, 745 F.2d at 1489–90 (sampling of every 200th page out of 60,000); *Cf. Weisberg*, 745 F.2d at 1490 ("There is no contention that the integrity of the *Vaughn* index is questionable, nor could there be in view of the fact that the sampling was random.").

Because, however, there is a risk that random sampling may overlook exemptions, as just described above and in Defendants' opening brief, *see* Defs.' Op. Br. at 5, ICE's proposed method of gathering a representative sample takes the additional step of reviewing the sample and adding in any omitted exemptions. *See In re U.S. Dep't of Def.*, 848 F.2d 232, 237 & n.7 (D.C. Cir. 1988) ("[U]nlike conclusions drawn from observing an entire population, those inferences based upon sample data will always include some error.") (quotations and citations omitted). Thus, by proposing to add pages to its Sample Index that may have been overlooked in the random sampling process, ICE can assure the Court that the sample will be representative of the whole.

Plaintiff concludes without any support that the only way to ensure that a Sample Index is truly representative of the whole is to count every exemption as it occurs in the entire production

and then verify that the Sample Index contains the same proportion of this exemptions. *See* Pl.'s Resp. at 5. This is simply untrue. There is no set formula for a *Vaughn* Index. *See Canning v. Dep't of Just.*, 263 F. Supp. 3d 303, 316 (D.D.C. 2017). Moreover, as Defendants stated in their opening brief, and Plaintiff concedes, "it is within the trial judge's discretion to choose the sampling method, as each specific case may require." Defs.' Op. Br. at 7 (citing *In re Dep't of Def.*, 848 F.2d at 237).

But even if the Court were to consider Plaintiff's proposed "count every exemption," method, the Court should reject this proposal, which is unnecessary and would defeat the entire purpose of using a Sample Index. First, as just discussed, Plaintiff's purported method of "counting every exemption" is not necessary to ensure that the sample is representative because courts in this District have accepted that random sampling is enough to ensure a representative sample—and in the event it is not, ICE proposes to add pages to the Sample Index containing any missing exemptions. Second, if an agency were truly required to count every exemption to ensure that a Sample Index was representative of the whole, this would defeat the entire purpose of using a Sample Index, because it would require the agency to review and account for every exemption in the process of preparing that index, rather than just a select sample of those exemptions to review and process.

Plaintiff claims that the task of "counting every exemption" is easy because ICE can simply use the "find" function in Adobe Acrobat to count the number of instances the phrase "(b)(6)"—presumably representing FOIA Exemption 6—appears in a production. *See* Pl.'s Resp. at 5. But Plaintiff's suggestion is self-defeating and misguided. Right after Plaintiff makes the claim that the task of "counting all exemptions" is easy, Plaintiff immediately concedes the opposite, as a record may not always be legible to Adobe's search engine and therefore Plaintiff proposes that

ICE would have to re-process its 7,000 pages of prior withholdings to ensure readability. *See id.* at 5 & n.5. Setting Plaintiff's proposed method for "counting all exemptions" aside, Plaintiff's suggestion, again, simply misses the mark. The purpose of using a Sample Index is, in part, to reduce the burden of work spent to prepare that index, not create more work than it would take to prepare a full *Vaughn* Index. If Plaintiff's "count every exemption" suggestion were actually required for courts to accept a Sample Index, then the option of using a Sample Index would be less attractive to agencies, which in turn would result in both plaintiffs and courts expending more time and resources to respond to, review, and rule on enormously long *Vaughn* Indices because Sample Indices would have taken more work to prepare.

Thus, the fact that ICE "did not undertake" the task of counting every exemption is neither required, nor grounds to defeat ICE's request to submit, and have the parties use, a Sample Index, gathered by ICE's proposed method of sampling. Because Plaintiff has identified no meritorious reason why the method ICE proposes to use to gather a representative sample would not be representative of the whole, the Court should grant ICE's motion entirely, over Plaintiff's unsupported objections.

## IV.     The Foreseeable Harm Provision of FOIA Does Not Preclude a Sample Index.

Plaintiff's final argument that the foreseeable harm requirement precludes the use of a representative Vaughn is also self-defeating, unsupported, and should be rejected for the following reasons. *See* Pl.'s Resp. at 5–9.

First, Plaintiff concludes that a Sample Index is inappropriate because it could never satisfy FOIA's foreseeable harm provision. *See id.* at 8. But Plaintiff also acknowledges at the beginning of its response that "D.C. Circuit precedent permits a sample *Vaughn* Index—one addressing only some select sample of exemptions." *Id.* at 3.

To address this inconsistency, Plaintiff next suggests that there are no cases past 2016 that have relied on Sample Indices as this was the year when Congress passed the FOIA Improvement Act codifying the foreseeable harm requirement under FOIA. *See id.* at 6. But this, too, is not true. *See Canning*, 263 F. Supp. 3d at 303 (denying plaintiff's request that the FBI needed to supplement its sample *Vaughn* index, after the Court found the sample sufficient for ruling on the parties' cross-motions for summary judgment); *Shapiro v. Dep't of Just.*, 2020 WL 3615511 (D.D.C. July 2, 2020) (using a representative sample *Vaughn* index to find that the FBI properly applied Exemptions 1, 3, 4, 6, 7(C), and 7(A), (D)-(E) to all withholdings); *c.f. Colgan v. Dep't of Just.*, Civ. A. No. 14-749 (TSC), 2020 WL 2043828 (D.D.C. Apr. 28, 2020) (denying summary judgment after concluding, in part, that the sample *Vaughn* index had extraordinary high error rate, not because it was impossible to use a sample *Vaughn* Index for purposes of summary judgment).[6]

Thus, as the caselaw above demonstrates, it is simply not true, as Plaintiff contends, that a Sample Index could never satisfy the foreseeable harm standard because the only way to meet this standard is to either account for all withholdings or "take a categorical approach" to addressing all withholdings. *See* Resp. at 7–8 (quoting *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 78–79 (D.D.C. 2018)). Indeed, a representative sample *Vaughn* index is inherently a categorical means to satisfy a showing that an agency met its burdens under FOIA because the records contained in the sample are representative of the whole and thus findings as to those sample withholdings can

---

[6] Notably, without reviewing Defendants' reply, Plaintiff has already threatened to file a sur-reply. *See* Pl.'s Resp. at 1 n.1. To the extent Plaintiff seeks to file a sur-reply on the basis that Defendants did not cite a post-2016 case in its opening brief, such request should be denied as Defendants' reliance on these cases now is used merely to respond to Plaintiff's suggestion that there is no court after 2016 in this District that relied on Sample Indices. *See Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014) (granting leave to file a sur-reply where defendant raised at list one new issue in the reply). In addition, Plaintiff could have searched for and located this case law as well before making any representation that no such cases exist.

10

be extrapolate to the whole. Thus, by its nature, a Sample Index can satisfy a showing of foreseeable harm via the categorical approach, which Plaintiff concedes is an option of meeting that foreseeable harm requirement.

In fact, to assure the Court that ICE's Sample Index will be a representative sampling, sufficient to address all categories of withholdings, Defendants explained in their opening brief that the types of material to which ICE applied its withholdings are largely the same for each category of exemption. *See* Defs.' Op. Br. at 7 (quoting Pineiro Decl. ¶ 15–24). Thus, for example, ICE applied Exemptions 6 and 7(C) in tandem to protect individuals' personal privacy interests in investigative records, including individuals' names, signatures, phone numbers, email addresses, mailing addresses, dates of birth, and other personally identifiable information. *See* Pineiro Decl. ¶ 18. Thus, ICE expects that its random sample will draw examples of each type of information appearing in investigatory records, and if not, can add those records to ensure the sample is representative. *See id.* ¶ 24. Similarly, ICE applied Exemption 5 to inter- or intra-agency records that are normally privileged in the civil discovery context, including deliberative process privilege, the attorney-client privilege, and attorney work-product and will ensure that a representative sampling of each category of privilege is present for the type of document in which it appears if the random sample does not account for these applications of Exemption 5 withholdings. *See id.* Finally, ICE relied on Exemption 7(E) for a discrete number of times to protect certain law enforcement techniques, which it also expects will be accounted for in the sample. *See id.* Finally, because ICE applied Exemption 4 in only one production, it expects to easily gather a comprehensive sampling of material from the concentrated batch of approximately 250 pages of contracts documents containing Exemption 4 withholdings. *See id.* ¶¶ 23–24.

Thus, the foreseeable harm provision does not preclude the use of a Sample Index here.

## **CONCLUSION**

For the reasons articulated above and in Defendants' opening brief and its accompanying papers the Court should grant Defendants' request to select and submit a representative sample *Vaughn* index and enter an order directing the parties to use the same on summary judgment.

Dated: July 18, 2023  Respectfully submitted,

MATTHEW M. GRAVES,
D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By:  */s/ Anna D. Walker*
ANNA D. WALKER
Assistant United States Attorney
United States Attorney's Office, Civil Division
601 D Street, NW
Washington, DC 20530
Phone: (202) 252-2544

*Counsel for the United States of America*